**MEMPHIS HOUSING AUTHORITY, Plaintiff,**

v.

**PAINE, WEBBER, JACKSON & CURTIS, INCORPORATED, et al., Defendants.**

**No. 85–2228 GA.**

United States District Court, W.D. Tennessee, W.D.

Feb. 28, 1986.

---

Martin H. Aussenbert, Memphis, Tenn., for plaintiff.

Everett B. Gibson, Irwin I. Cantor, Michael Richards, Memphis, Tenn., for defendants.

## ORDER OF PARTIAL DISMISSAL

GIBBONS, District Judge.

Plaintiff Memphis Housing Authority (MHA) has brought this lawsuit against a number of defendants alleging violation of the securities laws and commission of various common-law torts. Specifically, MHA maintains that defendants violated Sections 12(2) and 17(a) of the Securities and Exchange Act of 1933 (1933 Act), 15 U.S.C. Sections 77*l*(2) and 77q(a); Sections 10(b), 15(c) and 29(b) of the Securities and Exchange Act of 1934 (1934 Act), 15 U.S.C. Sections 78j(b), 78*o*(c), and 78cc(b); Rule 10b–5, 18 C.F.R. Section 240.10b–5; and provisions of the Tennessee Securities Act of 1980, T.C.A. Section 48–16–101 *et seq.*

MHA also claims that defendants committed fraud, intentional and negligent misrepresentation, fraud in the inducement, and deceit under the common law of Tennessee. Plaintiff has named three brokerage firms, one individual broker, and an employee as defendants. One of the brokerage firms, defendant Thomson McKinnon Securities, Inc. has moved for summary judgment or in the alternative for partial summary judgment.[1]

In its motion, Thomson McKinnon asks the court to dismiss MHA's fraud claim for failure to satisfy the particularity requirement of Rule 9(b) of the Federal Rules of Civil Procedure and the claim under Section 17(a) of the 1933 Act for failure to state a cause of action.[2] It also seeks summary judgment on a variety of claims under four legal theories. First, it maintains that MHA has failed to establish the causation necessary to bring an action under Sections 12(2) and/or 17(a) of the 1933 Act, Section 10(b) of the 1934 Act, Rule 10b–5 or Tennessee common-law fraud. Second, it contends that MHA has not established the elements required to bring an action for churning under the various securities laws. Third, it asserts that MHA's claims under Section 12(2) of the 1933 Act and Sections 15(c) and 29(b) of the 1934 Act are time barred. Finally, defendant argues that MHA's ratification of its transactions precludes all of its claims under federal law, its claims based on breach of fiduciary duty, and its claims of violation of the Tennessee Securities Act.

The court rejects all of defendant's summary judgment arguments. It also denies the motion to dismiss for failure to satisfy Rule 9(b)'s particularity requirement. The court, however, grants Thomson McKinnon's motion to dismiss MHA's claim under Section 17(a) of the 1933 Act.

### 1. *Particularity of Plaintiff's Fraud Allegations*

Thomson McKinnon moves to dismiss MHA's fraud claim for failure to comply with Rule 9(b) of the Federal Rules of Civil Procedure. Defendant maintains that because plaintiff's fraud allegations are conclusory and lacking in factual specificity, it cannot formulate a sufficient response. The court disagrees.

Allegations that state the time, place, and substance of allegedly fraudulent statements, along with the identity of the person making them, satisfy Rule 9(b). *See Bender v. Southland Corp.,* 749 F.2d 1205, 1216 (6th Cir.1984); *Bennett v. Berg,* 685 F.2d 1053, 1062 (8th Cir.1982), *aff'd in part, rev'd in part,* 710 F.2d 1361 (8th Cir.) (en banc), *cert. denied,* 464 U.S. 1008, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983). Plaintiff's complaint meets this standard. It alleges that the fraud occurred in conjunction with transactions made between January 1983 and April 1984 in the Memphis area. *See* Complaint at 58(c). Plaintiff cites a number of theories under which these transactions are fraudulent. *See* Complaint at 34. These include allegations that defendant lulled plaintiff into a false belief, failed to inform plaintiff of risks, encouraged plaintiff to engage in a program of massive speculation to generate significant income for defendant, and recklessly disregarded plaintiff's best interest in violation of its fiduciary duty. *See* Complaint at 39, 43, 47, 56. The allegations are certainly sufficiently specific to allow response.

Plaintiff's failure to specify which defendant and which transaction fall under a particular legal theory indicates that each defendant stands accused of each theory of fraud for each transaction. This approach amounts to no more than pleading in the alternative. *See* Rule 8(e)(2) of the Federal Rules of Civil Procedure. To list each

---

**1.** A number of defendant's arguments seek dismissal of claims based solely on the complaint and do not require consideration of affidavits or other evidence.

**2.** Defendant also contends that MHA cannot maintain an action based on violations of the rules of the New York Stock Exchange. Plaintiff explains, however, that it does not seek to bring a direct action under those rules. Consequently, the court need not consider this argument.

transaction in which fraud allegedly occurred would add only needless detail to the pleadings. *See Kimmel v. Peterson,* 565 F.Supp. 476, 479–82 (E.D.Pa.1983). The motion to dismiss the fraud claims is denied.

2. *Existence of an Implied Private Right of Action Under Section 17(a)*

■ Relying primarily on the Fifth Circuit's analysis in *Landry v. All Am. Assurance Co.,* 688 F.2d 381 (5th Cir.1982), defendant maintains that Section 17(a) of the 1933 Act 15 U.S.C. Section 77q(a), does not give rise to a private right of action. Plaintiff counters that *Landry* has adopted the minority position on this issue and argues that under the more recent standard set forth in *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran,* 456 U.S. 353, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982), this court should imply a cause of action under Section 17(a). The court does not agree that *Curran* requires implication of a private right of action under Section 17(a) and finds the *Landry* analysis persuasive. Consequently, it dismisses plaintiff's Section 17(a) claim.

As both parties recognize, the circuits have split on this issue. *Compare Stevenson v. Calpine Conifers II, Ltd.,* 652 F.2d 808 (9th Cir.1981); *Daniel v. International Bhd. of Teamsters,* 561 F.2d 1223 (7th Cir. 1977), *rev'd on other grounds,* 439 U.S. 551, 99 S.Ct. 790, 58 L.Ed.2d 808 (1979); *Kirshner v. United States,* 603 F.2d 234 (2d Cir.1978), *cert. denied,* 442 U.S. 909, 99 S.Ct. 2821, 61 L.Ed.2d 274 (1979); *Newman v. Prior,* 518 F.2d 97 (4th Cir.1975) (finding an implied cause of action), *with Landry v. All Am. Assurance Co.,* 688 F.2d 381 (5th Cir.1982); *Shull v. Dain, Kalman & Quail, Inc.,* 561 F.2d 152 (8th Cir.1977), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978) (finding no implied cause of action). The Sixth Circuit, however, has not yet taken a position. Although in a number of cases the Sixth

Circuit Court of Appeals has assumed that a cause of action existed under Section 17(a), *see Gutter v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 644 F.2d 1194 (6th Cir.1981), *cert. denied,* 455 U.S. 909, 101 S.Ct. 1256, 71 L.Ed.2d 447 (1982); *Herm v. Stafford,* 663 F.2d 669 (6th Cir.1981); *Nickels v. Koehler Management Corp.,* 541 F.2d 611 (6th Cir.1976), *cert. denied,* 429 U.S. 1074, 97 S.Ct. 813, 50 L.Ed.2d 792 (1977); *Simmons v. Wolfson,* 428 U.S. 455 (6th Cir.1970) (per curiam), *cert. denied,* 400 U.S. 999, 91 S.Ct. 459, 27 L.Ed.2d 450 (1971), in the most recent of these decisions the Sixth Circuit explicitly acknowledged the disagreement among the circuits and refused to decide the issue because it had not been raised on appeal. *Herm,* 663 F.2d at 678 n. 12.

The *Landry* opinion was based largely on application of the Supreme Court's decision in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). In *Cort* the Supreme Court adopted a four-part test for determining when to imply a private remedy.

> First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted,"—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff and finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

422 U.S. at 78, 95 S.Ct. at 2088 (citations omitted, emphasis in original). Of the six Courts of Appeal that have examined whether Section 17(a) provides a private cause of action, only the Fifth Circuit has applied the *Cort* test.[3]

---

**3.** For an explanation of the analyses taken by courts that have found an implied cause of   action see *Landry,* 668 F.2d at 384–86.

In *Landry,* the Fifth Circuit found that Section 17(a) did not meet the requirement set out in *Cort.* Section 17(a) provides that

It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportaion or communication in interstate commerce or by the use of the mails, directly or indirectly—

(1) to employ any device, scheme, or artifice to defraud, or

(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or

(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

15 U.S.C. Section 77q(a). The court concluded that this language did not suggest a private cause of action. It found that although one may argue that Section 17(a)(3)'s reference to "purchasers" suggests a special class that the statute was intended to protect, the statute represents merely a general censure of fraudulent practice with subsequent sections providing for equitable and criminal causes of action. 688 F.2d at 389. The court also recognized that the only congressional discussion of civil liability centered on Sections 11 and 12 of the 1933 Act. *Id.* at 389–90. The court then concluded that Section 11's prohibition of falsehoods and omissions in the registration statement and Section 12(2)'s protection of purchasers from misstatements or omissions in written or oral communications constituted Congress' intended enforcement scheme. Consequently, it reasoned that because Section 17(a) possesses none of the limitations of Sections 11 and 12, a cause of action under that section would frustrate Congress' scheme. *Id.* at 390. Finally, the court noted that application of the fourth part of the *Cort* test does not make implication of a private cause of action inappropriate because Congress explicitly found that states had been incapable of dealing with securities fraud. *Id.* at 390–91. After applying *Cort,* the *Landry* court said that that test "points away from the implication of a private cause of action." *Id.* at 391.

Plaintiff maintains, however, that *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran,* 456 U.S. 353, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982), narrowed the focus of the *Cort* test to essentially a review of congressional intent and that the Court recognized a variation of the traditional method of establishing congressional intent in cases like the one *sub judice.* Defendant disagrees, maintaining that *Curran* did not modify *Cort* and that the variation it set forth does not apply to this case.

In *Curran* the Supreme Court found that "it is abundantly clear that an implied cause of action under the [Commodity Exchange Act] was a part of the 'contemporary legal context' in which Congress legislated in 1974." 456 U.S. at 381, 102 S.Ct. at 1841. The Court held that "[i]n that context, the fact that a comprehensive reexamination and significant amendment of the CEA left intact the statutory provisions under which the federal courts had implied a cause of action is itself evidence that Congress affirmatively intended to preserve that remedy." *Id.* at 381–82, 102 S.Ct. at 1841. MHA asserts that in 1975 Congress enacted the most sweeping reform of the securities laws since the passage of the 1934 Securities Exchange Act. Plaintiff maintains that at the time of the 1975 amendments the overwhelming majority of lower federal courts which had considered the issue recognized a private right of action under Section 17(a). Thus, MHA argues that Congress intended to preserve this pre-existing remedy.

The court disagrees with plaintiff's argument. First, the court in *Landry* specifically noted the Supreme Court's increasing concern with the congressional intent inquiry subsequent to *Cort* and the paramount importance of that inquiry in determining whether a private action is to be implied. 688 F.2d at 388–89. The general

direction of *Landry* is fully consistent with the *Curran* opinion. Second, application of the reasoning of *Curran* does not support implication of a private cause of action under Section 17(a). In 1975, when the securities laws were amended, the lower federal courts were well aware of the conflict regarding the recognition of a private cause of action under Section 17(a), and the courts were divided on the issue.[4] *See, e.g., Unicorn Field, Inc. v. Cannon Group, Inc.,* 60 F.R.D. 217, 224 (S.D.N.Y. 1973) (referring to the existence of a private cause of action under Section 17(a) as an "extremely vexing question"). Thus, the uniform and well-understood consensus of opinion required by *Curran* did not exist. *See* 456 U.S. at 380, 102 S.Ct. at 1840. Therefore, the court rejects plaintiff's argument that the *Curran* analysis requires this court to find that Section 17(a) provides a private right of action.

The claim under Section 17(a) is dismissed.

### 3. *Causation Between the Alleged Fraud and the Injury Suffered*

■ Thomson McKinnon seeks to establish that no causation existed between its alleged fraudulent acts and plaintiff's injuries. Defendant maintains that MHA did not rely on defendant's acts in undertaking its investments and attributes any losses that plaintiff sustained to market forces. Because causation is an essential element of plaintiff's claim, defendant asks the court to grant its motion for summary judgment. MHA, however, contends that defendant misconstrues plaintiff's theory of recovery as well as the legal standard

necessary for obtaining summary judgment. The court agrees.

In *Affiliated Ute Citizens v. United States,* 406 U.S. 128, 153–54, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972), the Supreme Court stated that

> [u]nder the circumstances of this case, involving primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision. This obligation to disclose and this withholding of a material fact establish the requisite element of causation in fact.

(Citations omitted.) Thus, in evaluating defendant's motion, the court must determine whether Thomson McKinnon has established that no genuine issue of material fact exists as to plaintiff's lack of reliance on defendant's acts.

To fulfill this burden, defendant argues that Danny Davis, an MHA employee and co-defendant, did not rely on Thomson McKinnon in making MHA investment decisions and that the firm had no reason to suspect that Davis might be exceeding his authority as plaintiff's agent. In support of this argument defendant submits affidavits that state that Davis had initiated certain high-risk investments at issue in the case (Affidavit of James Coleman at 4), that Davis did not always follow defendant's recommendations (Affidavit of Britt Warth at 5), and that defendant did not place Davis under any duress (Affidavit of Danny Davis at 4). These arguments, how-

---

**4.** Compare those cases finding no cause of action, *Architectural League v. Bartos,* 404 F.Supp. 304, 313 (S.D.N.Y.1975); *Welch Foods, Inc. v. Goldman, Sachs & Co.,* 398 F.Supp. 1393, 1399–1401 (S.D.N.Y.1974); *Reid v. Mann,* 381 F.Supp. 525, 526–28 (N.D.Ill.1974); *Ferland v. Orange Groves of Fla., Inc.,* 377 F.Supp. 690, 706–07 (M.D.Fla.1974); *Hardy v. Sanson,* 356 F.Supp. 1034, 1038 (N.D.Ga.1973); *Dyer v. Eastern Trust and Banking Co.,* 336 F.Supp. 890, 903–05 (D.Me.1971); *Trussell v. United Underwriters, Ltd.,* 228 F.Supp. 757, 767–70 (D.Colo.1964), with those finding one, *Surowitz v. Hilton Hotels Corp.,* 342 F.2d 596, 603–04 (7th Cir.1965), *rev'd*

*on other grounds,* 383 U.S. 363, 86 S.Ct. 845, 15 L.Ed.2d 807 (1966); *Crowell v. Pittsburg & Lake Erie R.R. Co.,* 373 F.Supp. 1303, 1310–11 (E.D. Pa.1974); *Dorfman v. First Boston Corp.,* 336 F.Supp. 1089, 1093–95 (E.D.Pa.1972); *Larson v. Tony's Invs., Inc.,* 46 F.R.D. 612, 614 (M.D.Ala. 1969); *Hecht v. Harris Upham & Co.,* 283 F.Supp. 417, 423 (N.D.Cal.1968), *modified on other grounds,* 430 F.2d 1202 (9th Cir.1970); *Dack v. Shanman,* 227 F.Supp. 26, 28–29 (S.D.N. Y.1964); *Pfeffer v. Cressaty,* 223 F.Supp. 756, 757 (S.D.N.Y.1963); *Thiele v. Shields,* 131 F.Supp. 416, 419 (S.D.N.Y.1955); *Osborne v. Mallory,* 86 F.Supp. 869, 879 (S.D.N.Y.1949).

ever, do not address MHA's allegation that Thomson McKinnon breached a duty to inform Davis of the impropriety of engaging in speculative transactions in the absence of extenuating circumstances. *See* Affidavit of Francis Scott at 4. Defendant does not discuss, much less dispute, the materiality of such warnings. Thus, because *Affiliated Ute Citizens* requires the court to assume reliance from material omissions, the affidavit submitted by plaintiff raises a genuine issue of material fact regarding causation.

Defendant also argues that it did not know of plaintiff's investment objectives and could not have discovered them. Thus, it maintains that it could not have knowingly or recklessly disregarded the fact that Davis was acting ultra vires. Plaintiff counters, however, that defendant should have known that these investments were improper and that defendant failed to fulfill its duty to understand the special circumstances that justified these investments. *See* Affidavit of Francis Scott at 4. Without addressing the authenticity of the resolutions defendant purportedly received from Davis,[5] it remains unclear whether defendant understood why plaintiff had authorized the investments at issue or had explained to the principals the attendant risks. *See* Affidavit of Claiborne Selden at 2, 4. Thus, the court again assumes reliance from material omissions and finds that plaintiff's affidavits raise genuine issues of material facts.

Thomson McKinnon makes similar[6] causation arguments under Section 12(2) of the 1933 Act and under Tennessee common law.[7] Because the court has found that defendant's alleged omissions may have affected Davis' or the MHA Board of Directors' decision to engage in the transac-

tions that it made through the firm, the court rejects those arguments. As a result, the court denies defendant's summary judgment as to all these claims.

### 4. *Churning Claims*

■ Defendant asserts that plaintiff has failed to meet the prerequisites of a claim for churning. To establish churning, plaintiff must prove at trial (1) that trading in plaintiff's account was excessive in light of its investment objectives, (2) that the broker exercised control over trading in the account, and (3) that the broker acted with the intent to defraud or with willful and reckless disregard for the investor's interests. *See Miley v. Oppenheimer & Co.,* 637 F.2d 318, 324 (5th Cir.1981); *Mihara v. Dean Witter & Co.,* 619 F.2d 814, 821 (9th Cir.1980); *Newburger, Loeb & Co. v. Gross,* 563 F.2d 1057, 1069 (2d Cir.1977), *cert. denied,* 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 782 (1978); *Carras v. Burns,* 516 F.2d 251, 258 (4th Cir.1975). Defendant maintains that plaintiff has failed to contradict its evidence that it did not control the trading in plaintiff's account and that trading was not excessive. Moreover, defendant argues that even if it had controlled the trading, plaintiff ratified these trades. Plaintiff counters that the affidavits it has submitted raise genuine issues of material fact as to these claims. The court agrees.

■ Defendant relies on a number of affidavit statements that suggest that Davis retained control of plaintiff's account. Defendant's employees stated that Davis "[a]pparently ... did what he thought would be best suited to the needs of [MHA, and when defendant] ... would tell him of a certain buy on the market ..., sometimes he would buy the security and sometimes

---

**5.** MHA contests the authenticity of the Board of Directors' resolution in Collective Exhibit No. 2. *See* Affidavit of Claiborne Selden at 2. Because all the arguments in which defendant relies on that resolution would fail even if the resolution was authentic, the court need not evaluate the resolution's authenticity.

**6.** The court need not address the distinctions defendant makes among the different standards

of causation associated with different causes of action because the court's finding that the plaintiff may have relied on defendant's alleged omissions satisfies all of these standards.

**7.** The court need not address the issue of causation under Section 17(a) of the 1933 Act because the court has already dismissed that claim.

he would not" (Affidavit of James Coleman at 6), and that Davis was "fully aware of the nature of the transactions involved" (Affidavit of Britt Warth at 7). Moreover, one of Thomson McKinnon's employees stated that "the 'real' number of transactions that were involved was clearly not excessive given the time span." *Id.* at 8.

MHA does not directly attack this evidence,[8] but relies instead on the allegations in its complaint. Plaintiff does, however, present another theory of churning for which some evidence does exist. Plaintiff contends that defendant's failure to inform Davis of the impropriety of investing in speculative securities effectively eliminated Davis' control over the accounts. The court finds authority for this proposition in *Newburger*, 563 F.2d 1069–70, where the court said:

> In order to recover, the customer must show that the dealer effectively exercised control over trading in the account and manipulated the account to his benefit. Where, as here, the account is non-discretionary ..., the plaintiff must show that he relied extensively on the broker's advice and that the broker abused plaintiff's trust.

Plaintiff appears to argue that by failing to advise Davis of the risks, defendant abused plaintiff's trust and manipulated the account to its benefit. Moreover, MHA maintains that by unlawfully undermining its

investment objectives, defendant engaged in excessive trading; in other words, had plaintiff been apprised of the risks associated with Davis' investments it would have engaged in another course of investment that would have involved less trading. Thus, under plaintiff's theory of churning, the court finds that genuine issues of material fact exist.

For similar reasons, the court must reject defendant's ratification argument. If, as MHA alleges, defendant had not informed Davis of the impropriety of his investments, then contrary to defendant's contention, his receipt of confirmations might not evince a voluntary, intelligent, and knowing affirmation of the course of trading. *See Karlen v. Ray E. Friedman & Co. Commodities*, 688 F.2d 1193, 1197–98 (8th Cir.1982); *Fey v. Walston & Co.*, 493 F.2d 1036, 1050 (7th Cir.1974); *Hecht v. Harris, Upham & Co.*, 430 F.2d 1202, 1209 (9th Cir.1970); *Kravitz v. Pressman, Frohlich & Frost, Inc.*, 447 F.Supp. 203, 211 (D.Mass.1978). Thus, this argument would not alter the court's finding that defendant may have controlled plaintiff's account.[9]

### 5. *Limitations Period*

■ Defendant maintains that plaintiff should have known of the existence of the fraudulent conduct of which it complained by March 6, 1984, one year before it filed this lawsuit.[10] It contends that Board of

---

**8.** Nevertheless, the court entertains serious doubts about whether this evidence meets the summary judgment standard. As plaintiff noted elsewhere in its memorandum, the fact that Davis rejected some of defendant's investment recommendations does not negate the possibility that Davis generally followed defendant's recommendations or that his appearance of independence was a facade used to mask his embarrassment at being inexperienced. Similarly, the conclusory statement that "the 'real' number of transactions that were involved was clearly not excessive given the time span" does not permit the inference that, as a matter of law, trading was not excessive.

**9.** In Thomson McKinnon's fourth legal theory supporting its motion for summary judgment, it maintains that MHA's ratification of its transactions precludes all of its claims under federal law, its claims based on breach of fiduciary

duty, and its claims of violation of The Tennessee Securities Act. Under the analysis presented in this paragraph, the court rejects that argument.

**10.** Section 13 of the 1933 Act, 15 U.S.C. Section 77m, states:

> No action shall be maintained to enforce any liability created under [Section 11 or 12(2) of this Act] unless brought one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence....

Section 29(b) of the 1934 Act, 15 U.S.C. Section 78cc(b), states that

> no contract shall be void by reason of this subsection ..., unless such action is brought within one year after the discovery that such sale or purchase involves such violation....

Director resolutions, *see* Collective Exhibits Nos. 1 and 2, reveal that MHA knew that it was engaged in high-risk, speculative trading eighteen months prior to any transactions with defendant.[11] Plaintiff, however, argues that this evidence is not conclusive because a determination of when the limitations period began to run depends upon an evaluation of whether reasonable diligence on MHA's part would have disclosed defendant's alleged fraud by March 6, 1984. Plaintiff maintains that the facts necessary to resolve this issue remain in controversy. The court agrees.

Whether a plaintiff exercised reasonable diligence in uncovering a violation of securities laws is usually an issue for the trier of fact to resolve. *See Admiralty Fund v. Hugh Johnson & Co.*, 677 F.2d 1301, 1309–10 (9th Cir.1982); *Robertson v. Seidman & Seidman*, 609 F.2d 583, 591 (2d Cir.1979). Indeed, the case defendant cites for the proposition that summary judgment may be appropriate is not inconsistent with this rule, but rather represents an exception to it based on the specific facts of that case. In *Kramas v. Security Gas & Oil, Inc.*, 672 F.2d 766, 770–71 (9th Cir.), *cert. denied*, 459 U.S. 1035, 103 S.Ct. 444, 74 L.Ed.2d 600 (1982), the court knew that plaintiff had written letters in which he speculated that defendant might be "crooked." No such evidence exists in the instant case. Even if the resolutions are authentic, they fail to establish that plaintiff knew that defendant had engaged in fraudulent activity by not warning it of the speculative nature of Davis' investments. Moreover, plaintiff might very well have known the name of certain types of transactions without understanding the degree of risk they involved or that they violated Department of Housing and Urban Development Rules and Procedures. Because one could easily infer that plaintiff may not have become aware of how risky Davis' investments were or that defendant may have owed it a duty to inform it of the nature of this risk until long after it had engaged in these transactions, genuine issues of material fact remain. Consequently, summary judgment is inappropriate.

The motion is denied in its entirety, except for plaintiff's claim under Section 17(a) of the 1933 Act, which is dismissed.

IT IS SO ORDERED.

---

11. Thomson McKinnon also argues that a complaint must allege when discovery was made, what it was, how it was made, and why it was not made sooner. Because, however, this proposition conflicts with the liberal requirements of notice pleading, *see, e.g.,* Rule 8 of the Federal Rules of Civil Procedure, and the cases defendant cites that support this proposition predate significant amendments to the Federal Rules of Civil Procedure, *see Shonts v. Hirliman,* 28 F.Supp. 478, 486 (S.D.Cal.1939); *Fischman v. Raytheon Mfg. Co.,* 9 F.R.D. 707, 710 (S.D.N.Y. 1949), *rev'd on other grounds,* 188 F.2d 783 (2d Cir.1951), the court will not impose this requirement on plaintiff.