899 F.2d 485
 Fed. Sec. L. Rep. P 94,993, RICO Bus.Disp.Guide 7442
 Milton C. CRAIGHEAD; Milton C. Craighead, Jr.; Randle S.
Craighead; and Mark T. Craighead, Plaintiffs-Appellants,
v.
E.F. HUTTON & COMPANY, INC.; Robert L. Lyons; John Doe;
and Mary Moe, Defendants-Appellees.
 No. 89-3289.
 United States Court of Appeals,
Sixth Circuit.
 Argued Dec. 5, 1989.
Decided March 28, 1990.
 
 Phillip D. Frederick (argued), Sachs, Nunn, Kates, Kadushin, O'Hare, Helveston & Waldman, Detroit, Mich., for plaintiffs-appellants.
 Robert N. Rapp (argued), Calfee, Halter & Griswold and Roy A. Hulme, Reminger & Reminger, Cleveland, Ohio, for defendants-appellees.
 Before MILBURN and BOGGS, Circuit Judges, and ENGEL, Senior Circuit Judge.
 MILBURN, Circuit Judge.
 
 
 1
 Plaintiffs Milton C. Craighead and his three sons, Milton C. Craighead, Jr., Randall C. Craighead, and Mark T. Craighead ("Craigheads" or "plaintiffs"), appeal the dismissal of their claims alleging RICO and federal securities laws violations. After allowing discovery, the district court granted the defendants' motion to dismiss pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6). For the reasons that follow, we affirm.
 
 I.
 A.
 
 2
 Defendant Robert L. Lyons was, at all times relevant to this appeal, an account representative and employee of defendant E.F. Hutton & Company, Inc., a Delaware corporation registered with the Securities and Exchange Commission as a securities "broker-dealer."[1] Plaintiffs invested more than $868,000.00 with the defendants from 1982 through 1984.
 
 
 3
 On December 20, 1984, the Craigheads, two other individuals, and Inner City Nursing, Inc., filed a nine-count complaint that alleged that the defendants had churned their accounts and violated federal securities laws. In January 1985, the defendants moved to strike the complaint pursuant to Federal Rules of Civil Procedure 8, 11, 12, and 23. Plaintiffs moved for additional time to respond to the motion, and over the defendants' objections, the district court gave them an additional forty-five days.
 
 
 4
 On March 7, 1985, nine days before their extension was to expire, plaintiffs moved for an indefinite stay to enable them to hire new counsel and give him time to investigate the case. On March 19, 1985, the district court denied the plaintiffs' motion for an indefinite stay. It ordered them to secure new counsel immediately and to file either an amended complaint or a response to defendants' motion to strike by April 4, 1985. On May 3, 1985, the district court dismissed plaintiffs' complaint without prejudice because they had not complied with its order of March 19, 1985.
 
 
 5
 Nearly two years later, on February 13, 1987, the Craigheads filed the complaint that is the basis of this appeal. On April 27, 1987, the defendants moved to dismiss all claims on multiple grounds. The Craigheads argued that if the district court found their complaint lacking, it should allow them discovery so they could collect enough information to draft a sufficient pleading. In pretrial orders in May and August 1988, the district court granted the Craigheads' motion to compel discovery and established a discovery schedule. The district court took defendants' motion to dismiss under advisement pending completion of discovery, which was scheduled to close on November 18, 1988.
 
 
 6
 On December 13, 1988, the district court ordered plaintiffs to submit an amended complaint "pleading the factual basis for their fraud claims with particularity." On January 5, 1989, plaintiffs submitted their "First Amended Complaint" and a motion for leave to file it. Defendants challenged the proposed amended complaint on the ground that it failed to address any of the deficiencies in the original complaint.
 
 
 7
 On March 6, 1989, the district court granted plaintiffs' motion for leave to file the amended complaint. However, in the same order, the district court dismissed the case after it found that the allegations of fraud lacked the requisite particularity. Several of plaintiffs' claims were founded upon statutes and rules that did not imply private causes of action, and plaintiffs' RICO claims failed to include any predicate acts. The dismissal of the Craigheads' federal claims was with prejudice, but the dismissal of the remaining state claims was without prejudice. This timely appeal followed.
 
 B.
 
 8
 Milton Craighead was introduced to defendant Lyons, a securities dealer at the E.F. Hutton office in Pepper Pike, Ohio, in May 1982. Craighead alleges that when he agreed to allow Lyons to handle his investments, he instructed him to invest in low-risk securities to preserve the principal and generate interest income. Craighead alleges that he expressly instructed Lyons not to make any "risky investments." Craighead further alleges that Lyons represented that his principal would be safe and his investments would generate ten to fifteen percent in tax-free yields annually. Craighead and his three sons eventually transferred more than $500,000.00 to E.F. Hutton for Lyons to invest.
 
 
 9
 The Craigheads allege that Lyons completely disregarded their instructions and invested their accounts in high-risk stocks, options, and futures trading. They further allege that because Lyons acted on his own, and because E.F. Hutton did not properly supervise or train him, Lyons generated more than $40,000.00 in excessive commissions while losing approximately $82,000.00 of their principal.
 
 
 10
 In their amended complaint, the Craigheads plead the following claims:
 
 
 11
 Count 1 Churning--fraud in violation of 15 U.S.C. Secs. 77q(a), 78j(b) and 78o(c)(1); Rule 10b-5; and the National Ass'n of Securities Dealers Rules Art. III, Sec. 2;
 
 
 12
 Count 2 Unsuitable and excessive trading--fraud in violation of the above-listed statutes and rules;
 
 
 13
 Count 3 Unsuitable nature of trades--fraud in violation of the above-listed statutes and rules;
 
 
 14
 Count 4 Negligence;
 
 
 15
 Count 5 Liability of the controlling person (E.F. Hutton) in violation of 15 U.S.C. Sec. 78t;
 
 
 16
 Count 6 Negligent supervision;
 
 
 17
 Count 7 Breach of contract and breach of fiduciary duty;
 
 
 18
 Count 8 Breach of New York Stock Exchange Rule 405;
 
 
 19
 Count 9 Respondeat Superior;
 
 
 20
 Count 10 RICO, in violation of 18 U.S.C. Sec. 1962(a); mail fraud and securities fraud;
 
 
 21
 Count 11 RICO, in violation of 18 U.S.C. Sec. 1962(c);
 
 
 22
 Count 12 RICO conspiracy, in violation of 18 U.S.C. Sec. 1962(d);Count 13 Common law fraud; and
 
 
 23
 Count 14 Breach of fiduciary duty.
 
 
 24
 The district court dismissed the counts alleging churning, "unsuitable and excessive trading," and "unsuitable nature of trades" for failure to plead allegations of fraud with sufficient particularity. The district court was critical of the Craigheads' heavy reliance upon "information and belief" for factual allegations after they had been allowed discovery, as they had requested, and when many of their allegations were based upon records they should have had in their control. The district court also found that 15 U.S.C. Secs. 77q(a) and 78o(c)(1) did not provide for private causes of action, nor did New York Stock Exchange Rule 405. The district court dismissed Count 5 on the ground that if the Craigheads' securities claims failed against Lyons, their "controlling person" claim against his supervisors failed as well.
 
 
 25
 The district court also dismissed the Craigheads' RICO claims on the ground that their RICO claims were based upon allegations of fraud but they were not pleaded with the particularity required by Federal Rule of Civil Procedure 9(b). The district court also found that the Craigheads had failed to allege a pattern of predicate acts necessary to support a RICO claim.
 
 
 26
 The principal issues upon appeal are: (1) whether the district court erred in dismissing the churning claim on the basis of Federal Rule of Civil Procedure 9(b), (2) whether the district court erred in dismissing the other securities claims for failure to plead fraud with sufficient particularity and on the ground that 15 U.S.C. Sec. 77q(a) and New York Stock Exchange Rule 405 do not imply private causes of action, (3) whether the district court erred in dismissing the RICO claims for failure to plead fraud with sufficient particularity and failure to allege predicate acts, and (4) whether the district court abused its discretion in dismissing the Craigheads' federal claims with prejudice.
 
 II.
 
 27
 In evaluating a complaint in light of a Rule 12(b)(6) motion, the district court must accept all of the plaintiff's allegations as true and resolve every doubt in his favor. Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). "Whether the district court correctly dismissed [the plaintiff's] claims pursuant to Fed.R.Civ.P. 12(b)(6) is a question of law subject to de novo review." Dugan v. Brooks, 818 F.2d 513, 516 (6th Cir.1987).
 
 A.
 
 28
 "Churning" is a shorthand expression for a type of fraudulent conduct in a broker-customer relationship where the broker "overtrades" a relying customer's account to generate inflated sales commissions. Armstrong v. McAlpin, 699 F.2d 79, 90 (2d Cir.1983).
 
 
 29
 Churning consists of three elements, all of which must be present: (1) the trading must be excessive in light of the customer's investment objectives; (2) the broker must exercise control over the account; (3) the broker must act with intent to defraud or with willful and reckless disregard of the customer's interests.
 
 
 30
 M & B Contracting Corp. v. Dale, 795 F.2d 531, 533 (6th Cir.1986).
 
 
 31
 Because an allegation of churning is an allegation of fraud, it must be pleaded with particularity; generalized and conclusory allegations that the defendants' conduct was fraudulent do not satisfy Rule 9(b). Armstrong, 699 F.2d at 88; Decker v. Massey-Ferguson, Ltd., 681 F.2d 111, 114 (2d Cir.1982). It necessarily follows that allegations of churning cannot be based upon "information and belief," except where the relevant facts lie exclusively within knowledge and control of the opposing party, and even then, the plaintiff must plead a particular statement of facts upon which his belief is based. Stern v. Leucadia Nat. Corp., 844 F.2d 997, 1003-04 (2d Cir.), cert. denied, --- U.S. ----, 109 S.Ct. 137, 102 L.Ed.2d 109 (1988).
 
 
 32
 The district court found that the Craigheads failed to plead the first element of churning--excessive trading--with sufficient particularity. We agree.
 
 
 33
 To satisfy the requirements of Rule 9(b) in a claim for churning in violation of Rule 10b-5, the complaint ... should identify the securities involved and should contain a statement of facts which is sufficient to, at the very least, permit a rough ascertainment of either the turnover ratio or the percentage of the account value paid in commissions.
 
 
 34
 Polera v. Altorfer, Podesta, Wollard & Co., 503 F.Supp. 116, 118 (N.D.Ill.1980) (emphasis added); see also Rhoades v. Powell, 644 F.Supp. 645, 665-66 (E.D.Cal.1986); Heller v. Rothschild, 631 F.Supp. 1422, 1424-25 (S.D.N.Y.1986); Viscomi v. Paine, Webber, Jackson & Curtis, Inc., 596 F.Supp. 1537, 1539-40 (S.D.Fla.1984). Turnover ratio "is the ratio of the total cost of purchases made for [an] account during a given period of time to the amount invested...." Costello v. Oppenheimer & Co., 711 F.2d 1361, 1369 n. 11 (7th Cir.1983).
 
 
 35
 While no single test determines whether a broker churned an account, factors such as the turnover ratio, the ratio of account value to the amount of commissions generated during a given period, whether the broker engaged in "in and out" trading[2], and the number and frequency of trades in an account "introduc[e] some measure of objectivity or certainty into an otherwise recondite subject" and provide a basis for the allegation that a broker engaged in excessive trading. Costello, 711 F.2d at 1369; see also Bergen v. Rothschild, 648 F.Supp. 582, 585 (D.D.C.1986). With regard to turnover ratios, "excessive trading generally is thought to exist by courts and commentators when there is an annual turnover rate in an account in excess of six." Siegel v. Tucker, Anthony & R.L. Day, Inc., 658 F.Supp. 550, 554 (S.D.N.Y.1987); see also Mihara v. Dean Witter & Co., 619 F.2d 814, 821 (9th Cir.1980) (citing Churning by Securities Dealers, 80 Harv.L.Rev. 869 (1967)).
 
 
 36
 In this case, plaintiffs have alleged in paragraphs 18-21 of their "Proposed First Amended Complaint" that they invested $868,000 with defendants. In paragraphs 31-32, plaintiffs allege that they invested $642,201.00 with defendants during the period "from October 1982 through the Fall of 1983." Plaintiffs do not indicate whether the latter figure was invested in addition to the former or whether it comprised a portion of the former. Based upon our reading of the complaint as a whole, in the light most favorable to the plaintiffs, we interpret it to allege that plaintiffs invested a total of $868,000 with defendants from October 1982 through December 20, 1983.
 
 
 37
 Plaintiffs allege in paragraph 35 that between July 8, 1982[3] and September 29, 1983, defendants engaged in seventy-eight transactions in their accounts, at a total cost of approximately $1.58 million. Plaintiffs allege in paragraph 33 that these transactions generated more than $40,000 in commissions for defendants. Plaintiffs allege--upon information and belief--in paragraph 34 that the amount of $40,000 in commissions was excessive. Plaintiffs allege in paragraph 36 that as a result of the transactions in paragraph 35, they incurred losses of $81,864.00.
 
 
 38
 Accepting all of the plaintiffs' allegations as true, and resolving all doubts and drawing all inferences in their favor, the complaint alleges that plaintiffs invested $868,000 with defendants who, from July 8, 1982 through September 29, 1983, engaged in fifty-four purchases, at a cost of approximately $1.01 million, and twenty-four sales, at a cost of approximately $563,000. The highest turnover ratio on an annual basis that can be calculated from these figures--using either the entire fourteen-month period or any twelve-month period--is less than two. Even if the complaint is interpreted to imply an annual turnover ratio of two, this allegation, in itself, fails to plead the claim of excessive trading sufficiently, because in the absence of other special circumstances "an annual turnover rate of 2.00 is simply too low to justify a claim for churning...." Siegel, 658 F.Supp. at 554.
 
 
 39
 Plaintiffs also allege that the defendants' trading generated "excessive" commission--another sign of churning. However, there is no factual basis anywhere in the complaint to support even the inference that the commissions were excessive. Because this entire allegation is based solely upon "information and belief," it fails to satisfy the threshold pleading requirement of particularity. Stern, 844 F.2d at 1003-04.
 
 
 40
 Plaintiffs have not alleged, nor does anything in the complaint support the inference that defendants engaged in an inordinately large number of transactions during the time in question, or that defendants engaged in "in and out" or other, similarly questionable, trading, or that defendants engaged in any other conduct that would indicate that their trading was excessive. Plaintiffs argue that figures such as turnover ratios constitute evidence, which they need not provide to withstand a 12(b)(6) motion.
 
 
 41
 Plaintiffs' arguments reveal a misunderstanding of the obligations upon a plaintiff who brings a churning claim. Such a plaintiff need not necessarily plead an exhaustive list of transactions. But to allege something is "excessive" is, at its heart, to allege a comparison, and to plead a comparison with the specificity required by Rule 9(b), plaintiffs must indicate what is being compared, and how.
 
 
 42
 For example, when a plaintiff alleges that a broker turned his account over more than ten times in a year, he implicitly alleges that his broker exceeded the benchmark annual turnover ratio of six. See Siegel, 658 F.Supp. at 554 (alleging annual turnover ratio satisfies Rule 9(b), though alleged ratio of two fails to justify claim of churning); Bergen, 648 F.Supp. at 587 (alleging specific turnover ratio and commission-to-account value ratio satisfies Rule 9(b) pleading requirements for churning); Rush v. Oppenheimer & Co., 592 F.Supp. 1108, 1112 (S.D.N.Y.1984) (alleging turnover ratio of ten satisfies Rule 9(b)), rev'd in part, 779 F.2d 885 (2d Cir.1985). Similarly, a plaintiff who alleges that his broker engaged in "in and out" trading implicitly alleges that his broker has breached industry standards and practices, and thereby alleges a basis for the inference of excessive trading. See Costello, 711 F.2d at 1369 and n. 9.
 
 
 43
 Of course, a plaintiff alleging a specific turnover ratio or "in and out" trading must have an evidentiary basis for his claims, lest he incur sanctions for maintaining a frivolous action. The sufficiency of his evidence may be challenged in a dispositive, pretrial motion or at trial. To state a churning claim, however, the plaintiff must plead with specificity some basis supporting the allegation that his broker engaged in fraudulent conduct.
 
 
 44
 We are mindful that in evaluating plaintiffs' complaint, the demand for particularity in Rule 9(b) must be harmonized with the general principle of Rule 8 that a party need only plead "simple, concise and direct" allegations. See Michaels Bldg. Co. v. Ameritrust Co., N.A., 848 F.2d 674, 679 (6th Cir.1988). Nevertheless, we find plaintiffs' allegation of excessive trading to be a model of a generalized, conclusory allegation that lacks the particularity necessary to plead fraud. Having failed to plead an essential element of churning, there is no set of facts plaintiffs could prove in support of their claim that would entitle them to relief.[4]B.
 
 
 45
 Plaintiffs have alleged a cause of action based upon section 17(a) of the Securities Act of 1933, 15 U.S.C. Sec. 77q(a), which provides:
 
 
 46
 (a) It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly--
 
 
 47
 (1) to employ any device, scheme, or artifice to defraud, or
 
 
 48
 (2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
 
 
 49
 (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.
 
 
 50
 The district court cited two cases from other circuits that have found section 17(a) does not provide for a private cause of action and summarily dismissed plaintiffs' claims. We do not agree with such summary treatment.
 
 
 51
 Whether section 17(a) provides for a private cause of action has been the subject of debate between the circuits and the Supreme Court for decades. To date, the Supreme Court has expressly reserved the question in five cases.[5] Five circuits, the Fourth, Fifth, Eighth, Ninth, and Eleventh, have held that section 17(a) does not imply a private cause of action.[6] The Second and Seventh Circuits have left the question "open."[7]
 
 
 52
 This court has held that section 17(a) implies a private cause of action only for "purchasers." Gaff v. FDIC, 814 F.2d 311, 319 (6th Cir.), vacated in part on other grounds, 828 F.2d 1145 (1987); Gutter v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 644 F.2d 1194, 1196-97 (6th Cir.1981), cert. denied, 455 U.S. 909, 102 S.Ct. 1256, 71 L.Ed.2d 447 (1982); Simmons v. Wolfson, 428 F.2d 455, 456 (6th Cir.1970) (per curiam), cert. denied, 400 U.S. 999, 91 S.Ct. 459, 27 L.Ed.2d 450 (1971).
 
 
 53
 Plaintiffs have alleged they were "purchasers," but they have failed to allege that the defendants were "sellers" who could be held liable under section 17(a). There are few reported cases dealing with the issue of who is a "seller" under the 1933 Securities Act, and most of the reported cases deal with section 12, which makes it unlawful for anyone to "sell" a security by the use of fraudulent statements. In this regard, the 1933 Securities Act has been held to define "seller" not only as the party who passes title of ownership in the transaction, but also those parties that have played a "substantial role" in persuading or seducing the purchasers into buying the securities. See Pinter v. Dahl, 486 U.S. 622, 641-49, 108 S.Ct. 2063, 2076-79, 100 L.Ed.2d 658 (1988); Davis v. Avco Financial Services, 739 F.2d 1057, 1067 (6th Cir.1984), cert. denied, 470 U.S. 1005, 105 S.Ct. 1359, 84 L.Ed.2d 381 (1985).
 
 
 54
 Brokers have been held liable as "sellers" only in those cases where they were closely aligned with the title-holding parties or worked as agents of the securities issuers. See Pinter, 486 U.S. at 645, 108 S.Ct. at 2078; Adalman v. Baker, Watts & Co., 807 F.2d 359, 364-65 (4th Cir.1986); see also Leonard v. Shearson Lehman/American Express Inc., 687 F.Supp. 177, 179-80 (E.D.Pa.1988); Beck v. Cantor, Fitzgerald & Co., 621 F.Supp. 1547, 1560-62 (N.D.Ill.1985). Because plaintiffs have never alleged that defendants were ever affiliated or associated with, or acted as agents of, the issuers of the "high-risk stocks" plaintiffs have mentioned in their amended complaint, there is no set of facts they could prove that would entitle them to relief. Therefore, we hold that the district court did not err in dismissing plaintiffs' section 17(a) claim.
 
 C.
 
 55
 Plaintiffs also plead a cause of action based upon New York Stock Exchange Rule 405, which requires that member firms not open accounts for a customer until they have familiarized themselves with the customer. See Carras v. Burns, 516 F.2d 251, 260 (4th Cir.1975). We agree with the district court that NYSE Rule 405 does not imply a private right of action cognizable in federal court. See Bloch v. Prudential-Bache Securities, 707 F.Supp. 189, 195-96 (W.D.Pa.1989); Kakar v. Chicago Bd. Options Exchange, Inc., 681 F.Supp. 1039, 1041-44 (S.D.N.Y.1988); Charter House, Inc. v. First Tennessee Bank, N.A., 693 F.Supp. 593, 598 (M.D.Tenn.1988).
 
 D.
 
 56
 Plaintiffs also cite section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. Sec. 78j(b), and Securities and Exchange Commission Rule 10b-5 to support their claims of "unsuitable and excessive trading" and "unsuitable nature of trades." Section 10(b) and Rule 10b-5 should be liberally construed. Mansbach v. Prescott, Ball & Turben, 598 F.2d 1017, 1024 (6th Cir.1979).
 
 
 57
 As a general matter, however, private Sec. 10(b)/Rule 10b-5 damage claims can be said to require: 1) the use of jurisdictional means 2) to implement a deceptive or manipulative practice (with the requisite scienter) 3) in connection with 4) the purchase or sale 5) of a security 6) causing 7) damages.
 
 
 58
 Wilsmann v. Upjohn Co., 775 F.2d 713, 719 (6th Cir.1985) (quoting Mansbach, 598 F.2d at 1026), cert. denied, 476 U.S. 1171, 106 S.Ct. 2893, 90 L.Ed.2d 980 (1986). These claims are essentially fraud claims and must be pleaded with particularity. Moreover, "unsuitability" claims must plead "which transactions and securities are involved and the reason why these securities are unsuitable." Bischoff v. G.K. Scott & Co., 687 F.Supp. 746, 753 (E.D.N.Y.1986).
 
 
 59
 The district court found plaintiffs' allegations were lacking in three areas. First, they failed to indicate which of the securities defendants purchased were unsuitable, or why. Second, the complaint contains no allegations of any allegedly fraudulent statements uttered by the defendants, nor does it contain any particular allegations of reliance resulting in specific investment decisions. Third, the district court found plaintiffs had failed to plead the element of the defendants' control over their accounts with sufficient particularity.
 
 
 60
 Although plaintiffs rely on three cases for support, none applies to this appeal. McGinty v. Beranger Volkswagen, Inc., 633 F.2d 226 (1st Cir.1980), dealt with odometer tampering; Bosse v. Crowell Collier & Macmillan, 565 F.2d 602 (9th Cir.1977), involved a fraudulent loan and pledge arrangement; and Windsor Associates v. Greenfeld, 564 F.Supp. 273 (D.Md.1983), involved a civil RICO claim based upon a kickback scheme. Plaintiffs also overlook that in each of those cases, the plaintiffs also pleaded detailed accounts of the alleged fraud.
 
 
 61
 We agree with the district court that to state an "unsuitability" claim, a plaintiff must plead "which transactions and securities are involved and the reasons why these securities are unsuitable." Bischoff, 687 F.Supp. at 753. This may seem to conflict with the decision in Memphis Housing Authority v. Paine, Webber, Jackson and Curtis, Inc., 639 F.Supp. 108, 111 (W.D.Tenn.1986), which found such information "would add only needless detail" to the complaint. However, "unsuitability" was not involved in Memphis Housing, and the matter of which transactions were allegedly unsuitable or fraudulently induced was not at issue. Additionally, the plaintiffs in Memphis Housing pleaded the elements of their claim with much more specificity than the Craigheads. We hold that where a plaintiff alleges to be the victim of unsuitable trading or trades of an unsuitable nature, "it is not enough merely to allege or imply that the defendant broker's purchases are inconsistent with a customer's investment objective." Bischoff, 687 F.Supp. at 753.[8]
 
 E.
 
 62
 The Craigheads' tenth, eleventh, and twelfth counts allege violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. Secs. 1962(a), (c), and (d). We agree with the district court that plaintiffs' section 1962(a) claim is fatally flawed by its failure to plead the basic elements of the alleged predicate acts of mail fraud with sufficient particularity.[9]
 
 
 63
 If plaintiffs had alleged the necessary predicate acts, their section 1962(a) claim would still fail because they have not alleged injuries stemming directly from the defendants' alleged use or investment of their illegally obtained income. Unlike section 1962(c), subsection (a) requires such a separate and traceable injury, and plaintiffs have alleged only injuries traceable to the alleged predicate acts. See Grider v. Texas Oil & Gas Corp., 868 F.2d 1147, 1149 (10th Cir.), cert. denied, --- U.S. ----, 110 S.Ct. 76, 107 L.Ed.2d 43 (1989); Romano v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 834 F.2d 523, 527 n. 8 (5th Cir.1987), cert. denied, 487 U.S. 1205, 108 S.Ct. 2846, 101 L.Ed.2d 883 (1988).
 
 
 64
 Plaintiffs also allege that Lyons and E.F. Hutton employees "John Doe," "Mary Moe," and others conducted an enterprise engaged in interstate commerce through a pattern of racketeering, in violation of 18 U.S.C. Sec. 1962(c). In paragraph 97, plaintiffs list four alleged predicate acts which in effect provide:
 
 
 65
 97(a) Sets forth that Lyons was convicted of tendering a worthless check in August 1983. There is no indication where the check came from, or what it has to do with the allegations in this case;
 
 
 66
 97(b) Sets forth that Lyons forged his clients' signatures to various documents to obtain access to client funds. There is no indication what clients, what documents, what accounts, nor is there any indication of the time or place of the alleged fraud;
 
 
 67
 97(c) Sets forth that Lyons forged plaintiff Milton Craighead's signature on two checks and deposited them in his personal checking account. Again, there is no indication of time or place of the alleged fraud, or any details of how this naked act might relate to the others alleged in this paragraph;
 
 
 68
 97(d) Sets forth that the pattern of racketeering included "[t]he intentional use of fraud in the sales of securities." This conclusory allegation is deficient in several aspects, the most prominent one being that the plaintiffs have failed to plead securities fraud anywhere in the complaint.
 
 
 69
 The district court dismissed this count for failure to allege a pattern of racketeering, and we agree. The plaintiffs' collection of conclusions and unrelated, unexplained events fails to set forth any instance of mail fraud, securities fraud, or any other fraud, with any particularity. As plaintiffs have failed to allege any predicate acts, there can be no pattern of racketeering.
 
 
 70
 Plaintiffs' final RICO claim alleges the existence of a conspiracy, in violation of section 1962(d). Plaintiffs' conspiracy claim cannot stand in light of the dismissal of their other RICO counts. We note that this claim also fails to plead the existence of an agreement to engage in conduct that would amount to a RICO violation. Thus, while plaintiffs have pleaded the conclusory allegation that the defendants "conspired," they have failed to plead the elements of a conspiracy. See United States v. Neapolitan, 791 F.2d 489, 498-500 (7th Cir.), cert. denied, 479 U.S. 940, 107 S.Ct. 422, 93 L.Ed.2d 372 (1986); United States v. Sinito, 723 F.2d 1250, 1260 (6th Cir.1983), cert. denied, 469 U.S. 817, 105 S.Ct. 86, 83 L.Ed.2d 33 (1984).
 
 III.
 
 71
 The grant of a 12(b)(6) motion is an adjudication on the merits, unless the district court specifies the dismissal is without prejudice. Guzowski v. Hartman, 849 F.2d 252, 255 (6th Cir.1988); Shaw v. Merritt-Chapman & Scott Corp., 554 F.2d 786, 789 (6th Cir.), cert. denied, 434 U.S. 852, 98 S.Ct. 167, 54 L.Ed.2d 122 (1977). The decision to dismiss with prejudice is a harsh sanction, but the choice lies within the discretionary power of the district court, and we will not reverse absent a clear showing of abuse of discretion. Holloway v. United States, 734 F.2d 506, 508 (10th Cir.1984) (per curiam); Webber v. Eye Corp., 721 F.2d 1067, 1068 (7th Cir.1983) (per curiam); Dynes v. Army Air Force Exchange Service, 720 F.2d 1495, 1499 (11th Cir.1983) (per curiam).
 
 
 72
 Plaintiffs argue that the district court abused its discretion dismissing their federal claims with prejudice. They insist that the district court should have informed them of the deficiencies in their complaint and allowed them to submit another amended complaint. We cannot agree.
 
 
 73
 The procedural history of this appeal reveals that in the face of the defendants' motion to dismiss, plaintiffs moved for discovery to glean information so that they might state their claims with more particularity. In its order granting the plaintiffs' motion for the unusual privilege of pre-pleading discovery, the district court expressly explained that plaintiffs needed to plead "information relating to the types and numbers of transactions, including the fees earned by E.F. Hutton and its employees...." Thereafter, plaintiffs filed requests for documents and noticed several depositions. On December 13, 1988, the district court ordered plaintiffs "to plead the factual basis of their securities law, RICO and fraud claims with specificity." Yet, despite being instructed by the district court as to what they should plead, and despite being allowed discovery to determine if they had any causes of action to plead, plaintiffs have failed to plead any of their federal claims of fraud with any specificity.
 
 
 74
 Additionally, in evaluating the district court's exercise of its discretion, we are mindful of the fact that plaintiffs filed essentially the same complaint in December 1984 (dismissed without prejudice on May 3, 1985), which means their amended complaint in this action is actually their third attempt over five years to draft a sufficient complaint. At this stage in the litigation, we cannot say the district court abused its discretion in dismissing plaintiffs' federal claims with prejudice.
 
 IV.
 
 75
 For the foregoing reasons, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 After this litigation started, E.F. Hutton & Company was acquired by Shearson Lehman Brothers, Inc., and the surviving entity is known today as Shearson Lehman Hutton, Inc
 
 
 [2]
 "The term 'in and out' trading denotes the sale of all or part of a customer's portfolio, with the money reinvested in other securities, followed by the sale of the newly acquired securities. It is a practice extremely difficult for a broker to justify." Costello, 711 F.2d at 1369 n. 9
 
 
 [3]
 Plaintiffs list the first two transactions in paragraph 35 as occurring in 1986. Based upon our reading of the complaint as a whole, and especially paragraphs 18-21, we believe that the list contains typographical errors and the first two transactions should read as occurring on July 8 and September 17, 1982
 
 
 [4]
 We disagree with the district court's conclusion that plaintiffs failed to allege a factual basis for the second element of a churning claim; viz., broker control of the accounts. Paragraphs 17, 23, 26, 33, and 35 of the complaint allege that defendants exercised unchecked control of the accounts by disregarding plaintiffs' instructions, converting the plaintiffs' accounts to margin trading accounts, and engaging in a large number of unauthorized transactions involving options and futures trading. Nevertheless, in light of plaintiffs' failure to plead the first element of their claim with sufficient particularity, their success on other fronts is irrelevant
 
 
 [5]
 See Bateman Eichler, Hill Richards, Inc. v. Berner, 472 U.S. 299, 304 n. 9, 105 S.Ct. 2622, 2625 n. 9, 86 L.Ed.2d 215 (1985); Herman & MacLean v. Huddleston, 459 U.S. 375, 378 n. 2, 103 S.Ct. 683, 685 n. 2, 74 L.Ed.2d 548 (1983); Aaron v. S.E.C., 446 U.S. 680, 689, 100 S.Ct. 1945, 1951, 64 L.Ed.2d 611 (1980); International Bhd. of Teamsters v. Daniel, 439 U.S. 551, 557 n. 9, 99 S.Ct. 790, 795 n. 9, 58 L.Ed.2d 808 (1979); Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 733 n. 6, 95 S.Ct. 1917, 1924 n. 6, 44 L.Ed.2d 539 (1975)
 
 
 [6]
 See Newcome v. Esrey, 862 F.2d 1099, 1101-07 (4th Cir.1988) (en banc), reversing Newman v. Prior, 518 F.2d 97, 99 (4th Cir.1975); Currie v. Cayman Resources Corp., 835 F.2d 780, 784 (11th Cir.1988); In re Washington Pub. Power Supply Sys. Sec. Litig., 823 F.2d 1349, 1358 (9th Cir.1987) (en banc), reversing, e.g., Stephenson v. Calpine Conifers II, Ltd., 652 F.2d 808, 815 (9th Cir.1981); Deviries v. Prudential-Bache Securities, Inc., 805 F.2d 326, 328 (8th Cir.1986); Landry v. All Am. Assur. Co., 688 F.2d 381, 389 (5th Cir.1982)
 
 
 [7]
 See Ray v. Karris, 780 F.2d 636, 641 n. 3 (7th Cir.1985); Zerman v. Ball, 735 F.2d 15, 23 (2d Cir.1984). In S.E.C. v. Texas Gulf Sulphur Co., 401 F.2d 833, 867 (2d Cir.1968) (en banc) (Friendly, J., concurring), cert. denied, 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969), Judge Friendly suggested there was no reason not to find an implied private cause of action in 17(a), given that the courts recognized one under 10(b), and indeed, the Second Circuit followed Judge Friendly's suggestion in Kirshner v. United States, 603 F.2d 234, 241 (2d Cir.1978), cert. denied, 442 U.S. 909, 99 S.Ct. 2821, 61 L.Ed.2d 274 (1979). However, after the Supreme Court found significant differences in 17(a) and 10(b), Judge Friendly suggested that the question was "open to reexamination." Yoder v. Orthomolecular Nutrition Inst., 751 F.2d 555, 559 n. 3 (2d Cir.1985). Without ever overruling Kirshner, the Second Circuit has reserved comment on Judge Friendly's change of mind, but it now considers the question of a private cause of action founded on 17(a) to be open. Manufacturers Hanover Trust Co. v. Drysdale Securities Corp., 801 F.2d 13, 25 (2d Cir.1986), cert. denied, 479 U.S. 1066, 107 S.Ct. 952, 93 L.Ed.2d 1001 (1987)
 
 
 [8]
 The Craigheads also originally pleaded claims based on 15 U.S.C. Secs. 78o (c)(1), 78t, and the National Association of Securities Dealers Rules Art. III, sec. 2. Because they have not pursued these issues on appeal, we consider them to be abandoned. McMurphy v. City of Flushing, 802 F.2d 191, 198-99 (6th Cir.1986)
 
 
 [9]
 Plaintiffs also insist that their allegations of churning and "unsuitability" constitute predicate acts. However, these assertions must be rejected in light of our conclusion that those claims were properly dismissed