Gyl L. LANTZ, (formerly Gyl L. Kinne), Trustee for the benefit of the Gyl L. Kinne Trust, Plaintiff,

v.

PRIVATE SATELLITE TELEVISION, INC., PSTV 1984–1 Limited Partnership, Allen Duplantis, M.D., Kathryn Duplantis, M.D., Russell F. Burns, M.D., Michael Leddy, Dorothy Cortemeglia, Wayne W. Moran, Ellen Hammonds, South Central Financial Group, Inc., Signet Securities Corporation, Leroy G. Johnson and Johnson & Guernsey, P.C., Defendants.

Civ. A. No. 92–CV–40188–FL.

United States District Court, E.D. Michigan, S.D. at Flint.

Jan. 26, 1993.

Allen R. Telgenhof, Hicks & Schmidlin, P.C., Flint, MI, for plaintiff.

Robert A. Hudson, Karl F. Newman, Berry, Moorman, King & Hudson, Detroit, MI, F. Robert Schmelzer, Gault, Davison,

Bowers, Hills Parker & McAra, Flint, MI, for defendants.

## MEMORANDUM OPINION AND ORDER

NEWBLATT, District Judge.

Before the Court is defendant Signet Securities Corporation's ("Signet") motion for judgment on the pleadings (D.E. # 7), plaintiff's response, and Signet's reply. A hearing regarding Signet's motion was held on August 14, 1992. After the filing of Signet's motion, an Order was entered by which plaintiff dismissed all counts against Signet except for count VII, which asserts a claim of malpractice. Count VII alleges that Signet purchased securities for plaintiff without conducting an investigation of the investment or the consumer as required by the NYSE and NASD rules. Count VII further alleges that Signet owed four duties to plaintiff, including the duties to: (1) manage plaintiff's account comporting with the needs of the customer; (2) act in the best interests of the customer; (3) act in good faith; and (4) explain the impact and risk of the course of dealing. Signet allegedly breached each of these duties by failing to even contact plaintiff. For the reasons that follow, Signet's motion is GRANTED IN PART and DENIED IN PART.

This action arises out of business dealings between plaintiff and Public Satellite Television ("PSTV"). Plaintiff, working through her accountant, Leroy G. Johnson,[1] "loaned" money to PSTV pursuant to a special lender note dated December 31, 1984. Plaintiff's Response at 1. Under that agreement, PSTV was to pay plaintiff her principal plus 16% interest by December 31, 1989, or sixty days after the sale of the systems. *Id.* Plaintiff allegedly dealt solely with Mr. Johnson in this transaction, which she was unaware constituted the sale of a security and by law could only be sold by a licensed broker. Unbeknownst to plaintiff, defendant Signet Securities acted as the broker-dealer for this investment.

Plaintiff claims that only through review of her files by her attorney did she discover Signet's involvement in the transaction. *Id.* This allegedly did not occur until six months before plaintiff's filing of this action. Plaintiff's Response at 9.

At some point, at the request of PSTV, plaintiff extended the term of her loan to June 30, 1990. On that date, however, PSTV defaulted, precipitating this lawsuit. Plaintiff brings suit against defendant Signet Securities because Signet was the registered representative for plaintiff's account. Plaintiff also alleges that Signet never met with plaintiff regarding this representation. This, claims plaintiff, constitutes malpractice under the laws of Michigan.

■ The first issue is whether plaintiff properly brings this action as one for malpractice, or if it must be brought in negligence. As plaintiff notes, Michigan law has defined malpractice as a breach of the duty owed by one rendering professional services to a person who has contracted for such services. Plaintiff cites several cases and argues with reference to Michigan Civil Standard Jury Instructions. These authorities, however, are not dispositive of the question. The Michigan courts have recognized primarily persons in the legal and medical professions, and those which hold themselves out to be in such professions, to be subject to an action for malpractice. The state courts have also extended the malpractice cause of action to other "professions." *See* plaintiff's response at 6 (dentists, chiropractors, architects, psychologists, and social workers). The state courts have, nevertheless, made a distinction, however blurred, between persons within licensed professions (subject to malpractice) and those within licensed occupations (not subject to such action). The Michigan Supreme Court, in holding that attorneys were subject to malpractice actions, stated that:

---

**1.** Mr. Johnson and his firm originally were named as defendants but have been dismissed

for diversity purposes.

An attorney is called upon by his or her profession to make decisions that involve the exercise of independent professional judgment of essentially the same serious quality as those made by a physician, albeit involving a different expertise. *Cf. Kambas* [v. St. Joseph's Mercy Hospital of Detroit], 389 Mich. [249] 255–56 [205 N.W.2d 431 (1973)]. In our view, attorneys are deserving of the same protection afforded physicians, surgeons and dentists by the two-year malpractice period of limitations....

*Sam v. Balardo,* 411 Mich. 405, 435–36, 308 N.W.2d 142 (1981). In expanding the malpractice definition, the court determined that attorneys, like those in the medical profession, required some special treatment because of the nature of their profession. The court cited the "serious quality" of their need to exercise independent professional judgment.

It is striking that malpractice liability has been extended primarily only to those in the medical and legal professions. There are no cases cited by either party with regard to whether broker-dealers of securities are subject to malpractice actions. Moreover, this does not seem to be the type of profession or occupation in which its practitioners are called upon to make decisions that involve the exercise of independent professional judgment of essentially the same serious quality as those made by a physician or an attorney. In fact, the essence of this lawsuit is that Signet made a decision without plaintiff's consent. I think in light of these factors, this Court should not extend malpractice liability to dealers and brokers of securities. Therefore, although Signet's conduct as alleged by plaintiff may be professional negligence, it does not fall within the definition of malpractice as that category of negligence is used in M.C.L. § 600.5838.

◾ Given that Signet is not subject to an action in malpractice, then plaintiff's claim must lie in negligence. Signet's argument that this negligence action must be brought pursuant to the Michigan Uniform Securities Act is misplaced. I would agree that if plaintiff's action was for sale of an unlicensed security, plaintiff's sole remedy would be under M.C.L. § 451.810. This claim, however, has been dismissed. The remaining count against this defendant alleges negligent action in performance of Signet's alleged duties to plaintiff. Therefore, this count alleges a claim for negligence.

◾ Plaintiff states as part of its negligence claim that Signet's conduct did not conform to the rules of the NYSE and NASD. The Sixth Circuit has held, however, that these rules do not provide a private right of action *Craighead v. E.F. Hutton & Co., Inc.,* 899 F.2d 485, 493 (6th Cir.1990). These rules, therefore, do not create duties the breach of which are actionable by a customer. Summary judgment is GRANTED in favor of Signet with regard to this issue.

◾ The final issue is whether plaintiff's claim is barred by the three year negligence statute of limitations period pursuant to M.C.L. § 600.5805(8). The limitations period begins to run from the time the claim accrues. M.C.L. § 600.5827. Section 5827 provides that "[t]he claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results." M.C.L. § 600.5827. The Michigan Supreme Court, in interpreting § 5827, has determined that a negligence claim accrues at the time when all the elements of that cause of action are present, including damages. *Connelly v. Paul Ruddy's Equipment Repair & Serv. Co.,* 388 Mich. 146, 150–51, 200 N.W.2d 70 (1972). The Court reasoned that § 5827 merely commences the limitations period from the time of the "actionable wrong," which in the case of negligence includes the element of damages. *Id.* The language of § 5827, that the action accrues "regardless of the time when damage results," still has meaning, however, in the sense that future damages do not give rise to a new limitations period. *Id.* Thus, once some damage occurs, the negligence claim has accrued.

An important sub-issue is whether the claim accrues regardless of whether the plaintiff has knowledge, or should have

known, that the damage was caused by a particular defendant. The parties have not addressed this issue as it relates to plaintiff's negligence claim. Moreover, the parties dispute whether damage occurred in 1988, when the "loan" to PSTV was extended, or in 1990, when PSTV defaulted on the new agreement reached in 1988. In sum, there are two key factual disputes that preclude a finding of summary judgment at this time. First, there is the factual dispute as to when plaintiff knew, or should have known, that Signet acted as a broker-dealer for plaintiff in this transaction. Second, there is a dispute as to when damage occurred in this case. The parties focus on the time that it became apparent that PSTV would not make good on their obligation to repay the "loan." The Court is not convinced that either party focuses upon the proper event. The breach in this action is alleged to be the purchase of securities without fulfilling certain duties related to consulting with plaintiff and ensuring that Signet's investment advice was tailored to plaintiff's needs. The Court is of the opinion that the cause of action would accrue upon plaintiff's gaining knowledge that Signet had been managing this transaction. At that point, the damage would have been suffered—i.e., plaintiff would have made an investment without the safeguards that Signet's duties were meant to insure. Whether plaintiff's investment ultimately proved beneficial or disastrous would only reflect future damages. The injury would have occurred at the time of the transaction itself. Nevertheless, the Court has not been briefed upon certain key issues and does not make any determinations of fact or law regarding plaintiff's negligence claim at this time. Defendant Signet has not established that plaintiff's complaint fails to set forth a claim for negligence, nor has Signet referred to any facts in the record that support the inference that plaintiff must have known of Signet's role in the transaction in 1988.

For the foregoing reasons, defendant Signet Securities Corporation's motion for judgment on the pleadings is GRANTED IN PART and DENIED IN PART, as specified herein. To the extent that Signet seeks judgment against plaintiff on the pleadings presently before the Court, the motion is DENIED.

SO ORDERED.