Margaret B. ADAM, On Behalf Of
Herself and All Others Similarly
Situated, Plaintiffs,

v.

SILICON VALLEY BANCSHARES,
et al., Defendants.

No. C 93–2039 RMW (AEI).

United States District Court,
N.D. California.

Jan. 9, 1995.

McCutchen, Doyle, Brown & Enersen,
Philip Rotner, James Kleinberg, Mary Hus-

er, San Jose, CA, Genevieve Roche, Deloitte and Touche, New York City, for defendant.

William Lerach, Jan Adler, Sharon Maier, Milberg Weiss Bershad, Hynes & Lerach, San Diego, CA, David J. Bershad, Milberg, Weiss Bershad, Hynes & Lerach, New York City, for plaintiffs.

## ORDER DENYING MOTION TO DISMISS FIRST AMENDED COMPLAINT

WHYTE, District Judge.

Defendant Deloitte & Touche's motion to dismiss plaintiffs' class action complaint alleging a violation of the Securities Exchange Act was heard on December 9, 1994. After the hearing, the Ninth Circuit rendered its opinion in *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541 (9th Cir.1994) (en banc). Both sides submitted letter briefs in light of that opinion.[1] The court has considered the moving papers and opposing papers including the post-hearing submittals and the oral argument on the motion. For reasons that will be set forth more fully below, the court denies defendant's motion to dismiss.

### I. Background

This lawsuit is a securities class action brought on behalf of all persons (other than the defendants) who purchased the common stock of Silicon Valley Bancshares ("SVB") between January 9, 1991 and October 22, 1992. Plaintiffs contend that, by the end of 1990, SVB was incurring substantial losses in its loan portfolio due largely to inadequate monitoring and loss recognition procedures. According to plaintiffs, SVB issued to plaintiffs a series of false and misleading "financial statements and a series of favorable public statements in annual and quarterly reports to shareholders, press releases and press interviews," including a Prospectus for the sale of common stock issued in July 1991. Those statements allegedly masked, among other things, the true nature and amount of SVB's earnings, future business prospects, nonperforming loans and loan loss reserves.

The defendants in this case originally included SVB and its officers and directors as well as the moving party, defendant Deloitte and Touche ("D & T"), who served as an independent auditor for SVB during the class period. However, plaintiffs and all defendants except for D & T reached a settlement as to all claims brought in this action; final approval of that settlement was issued on November 28, 1994. Thus, D & T is the only defendant remaining in this case.

Plaintiffs contend that D & T violated Section 10(b) of the Securities Exchange Act and rule 10b–5 promulgated thereunder (collectively, "10(b)"), when it "caused or permitted SVB to issue" the allegedly misleading financial statements, annual and quarterly reports, and press statements. Specifically, plaintiffs assert that D & T was aware of critical weaknesses in SVB's internal controls and loan portfolio, yet "never expanded its audit procedures to accommodate these material weaknesses as required by GAAS, and falsely assured investors both that it had complied with GAAS and that SVB's financial statements fairly presented its financial condition in conformity with GAAP." Plaintiffs' Opp. at 6. Plaintiffs claim that D & T's opinion stating that its audits of those statements were conducted in accordance with GAAS, that the statements conformed with GAAS, and that the statements "fairly presented" SVB's financial position were material misrepresentations, and that D & T "participated in a scheme to defraud through its involvement in SVB's Prospectus, interim financial statements and press releases." *Id.* at 15.

On February 8, 1994, this court issued an order ("Order") dismissing, *inter alia*, plaintiffs' 10(b) claim after finding that plaintiffs had failed to allege an actionable misrepresentation by D & T, had failed to allege facts supporting an inference of scienter, and had failed to state a claim for secondary liability. However, the court gave plaintiffs leave to amend their complaint to adequately plead a

---

1. Deloitte and Touche urged the court to defer ruling on the motion to dismiss and set a date for an early summary judgment motion. The court does not believe that any purpose would be served by deferring a ruling on the motion to dismiss. An early summary judgment motion may or may not be appropriate based upon what discovery reveals.

10(b) claim. Plaintiffs filed their first amended complaint on July 8, 1994.

D & T now moves to dismiss the first amended complaint, pursuant to Federal Rules of Civil Procedure, Rules 9(b) and 12(b)(6). It first argues that a recent Supreme Court case eliminates any claim against it for statements that it did not itself make, or that were not made to effect the purchase or sale of securities. D & T further contends that, as to the only statement which it arguably did make in connection with the purchase and sale of securities, plaintiffs have failed to state an actionable claim against D & T.

## II. Legal Standards

### A. Motion to Dismiss

■ In ruling on a motion to dismiss, district courts must accept all material allegations of fact alleged in the complaint as true, and resolve all doubts in favor of the plaintiff. *Blake v. Dierdorff,* 856 F.2d 1365, 1368 (9th Cir.1988). The court may dismiss a complaint as a matter of law for either of two reasons: (1) lack of a cognizable legal theory, or (2) the pleading of insufficient facts under a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 533 (9th Cir.1984). The Ninth Circuit recently reiterated the pleading standard in the securities fraud context:

> [While] Rule 8[a] . . . requires a "short and plain statement of the claim showing that the pleader is entitled to relief," . . . Rule 9(b) clearly imposes an *additional* obligation on plaintiffs: the statement of the claim must *also* aver with particularity the circumstances constituting fraud. . . .
>
> . . . .
>
> [P]laintiff must include statements regarding the time, place and *nature* of the alleged fraudulent activities. . . . [T]he plaintiff must set forth an explanation as to why the statement or omission complained of was false and misleading.

*In re GlenFed, Inc. Sec. Litig.,* 42 F.3d 1541, 1547–48 (9th Cir.1994) (en banc) (citations omitted).

## B. Primary and Secondary 10(b) Liability

### 1. Primary Liability

SEC Rule 10b–5(b) essentially outlaws the making of a material misrepresentation or omission. Rule 10–b also makes it unlawful for any person, "directly or indirectly" to "employ any device, scheme or artifice to defraud," SEC Rule 10b–5(a), or to "engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." SEC Rule 10b–5(c).

### 2. Secondary Liability

■ In *Central Bank of Denver v. First Interstate Bank of Denver,* —— U.S. ——, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994), the Supreme Court held that a private cause of action for aiding and abetting cannot be brought under Rule 10b–5 after finding, based on the language of the 10(b) statute, that Congress did not intend for aiding and abetting liability to attach to a private 10b–5 cause of action. *Id.* at ——, 114 S.Ct. at 1448. The Court did not address the feasibility of a private cause of action for other forms of secondary liability, such as liability for conspiracy. However, in *In re Ross Systems Sec. Litigation,* slip op. C–94–0017–DLJ, 1994 WL 583114 (N.D.Cal. July 21, 1994), this court found that *Central Bank* also prohibited conspiracy liability under 10(b) ("[i]t is beyond logic to maintain that although *Central Bank* prohibits aiding and abetting liability it permits plaintiffs to maintain the same cause of action by labeling it conspiracy.").

This court reviewed the allegations of plaintiffs' first amended complaint with these standards in mind.

## III. Analysis

### A. Conspiracy Liability

D & T argues that the Supreme Court's *Central Bank* decision eliminated a private cause of action for conspiracy liability as well as aiding and abetting liability. Whether *Central Bank* should be so interpreted is a question this court need not address. In their complaint, plaintiffs charge D & T with

**primary** 10(b) liability for D & T's alleged misrepresentations and participation in a scheme to defraud; nowhere do they allege that D & T is secondarily liable.

## B. Primary Liability for Statements Made by Others

■ According to D & T's interpretation of *Central Bank*, courts can no longer hold accountants primarily liable for fraudulent statements which they did not make themselves. D & T bases this assertion on the *Central Bank* Court's directive that courts adhere to the plain language of the 10(b) statute and the Court's conclusion that "the statute prohibits only the making of a material misstatement (or omission) or the commission of a manipulative act ... The proscription does not include giving aid to a person who commits a manipulative or deceptive act." *Central Bank, supra,* —— U.S. at ——, 114 S.Ct. at 1448 (citations omitted). Some courts have adopted an interpretation of *Central Bank* which appears to lend support to the position now urged by D & T. *See In Re Kendall Square Research Corp. Sec. Litig.,* 868 F.Supp. 26, 28 (D.Mass.1994) (Price Waterhouse not primarily liable for alleged review and approval of financial statements or prospectuses because only "those who make a material misstatement or omission or commit a manipulative act" are subject to primary liability); *Vosgerichian v. Commodore Int'l,* 862 F.Supp. 1371, 1377–78 (E.D.Pa.1994) (Arthur Andersen not primarily liable for statements made by company despite allegations that company "consulted with" AA and "AA advised or concurred with" company's decision).

However, the Ninth Circuit has indicated that an accounting firm can be primarily liable for representations made by others. In *In re Software Toolworks, Inc. Sec. Litig.,* Case No. 94–16160, —— F.3d ——, 1994 U.S.App. LEXIS 29074 (9th Cir. Oct. 19, 1994), the court found that allegations that Deloitte and Touche significantly participated in a fraudulent scheme continue to be actionable despite *Central Bank.* The court stated that:

[T]he plaintiffs' complaint clearly alleges that Deloitte is primarily liable under section 10(b) for the SEC letters ... Similarly, the plaintiffs presented evidence that Deloitte played a significant role in drafting and editing the July 4 SEC letter. This evidence is sufficient to sustain a primary cause of action under section 10(b) and, as a result, Central Bank does not absolve Deloitte of liability on these issues.

*Id.* at —— n. 3, *32 n. 3 (citations omitted). *See also In re ZZZZ Best Sec. Litig.,* [Current Transfer Binder], Fed.Sec.L.Rep. ¶ 98,-394, 864 F.Supp. 960 (C.D.Cal. Aug. 12, 1994) (holding that accounting firm can be primarily liable for statements of others contained in financial statements, press releases, and other public statements under Rule 10b–5(a) and (c)).

Indeed, the *Central Bank* Court itself explicitly recognized that 10(b) may reach the actions of accountants:

The absence of § 10(b) aiding and abetting liability does not mean that secondary actors in the securities markets are always free from liability under the securities acts. Any person or entity, including a lawyer, accountant, or bank, who employs a manipulative device or makes a material misstatement (or omission) on which a purchaser or seller of securities relies may be liable as a primary violator under 10b–5, assuming all of the requirements for primary liability under Rule 10b–5 are met ... In any complex securities fraud, moreover, there are likely to be multiple violators.

*Central Bank, supra,* —— U.S. at ——, 114 S.Ct. at 1445 (emphasis omitted). Thus, plaintiffs in this case may maintain a cause of action alleging primary liability against D & T based on the various financial statements, press statements, and reports issued by SVB.

## C. "In Connection With" Requirement for Primary 10(b) Liability

■ D & T further argues that the only statement which arguably satisfies Rule 10b–5(c)'s "in connection with the purchase or sale of securities" requirement is the December 31, 1990 financial statement audited by D & T and contained in SVB's Prospectus. According to D & T, none of the other statements challenged by plaintiffs was issued "in

connection with the purchase or sale of securities." D & T claims that, after *Central Bank*, the only documents which can be the basis for accountant liability are "selling documents," i.e. documents used by either sellers or purchasers of securities to effect a particular sales transaction. D & T concedes that this interpretation of the "in connection with" requirement, while "mandated" by *Central Bank*, represents a far narrower construction of the requirement than the one traditionally adopted by the courts.

The Ninth Circuit has traditionally taken an expansive view of the "in connection with" requirement, recognizing that statements satisfy the "in connection with the purchase or sale of any security" requirement of Rule 10b–5(c) if the statements were "made ... in a manner reasonably calculated to influence the investing public, *e.g.* by means of the financial media." *Wessel v. Buhler*, 437 F.2d 279, 282 (1971) (citations omitted). The court in *SEC v. Rana Research*, 8 F.3d 1358 (9th Cir.1993), noted that:

> Where the fraud alleged involves public dissemination in a document such as a press release, annual report, investment prospectus or other such document on which an investor would presumably rely, the "in connection with" requirement is generally met by proof of the means of dissemination and the materiality of the misrepresentation or omission.

*Id.* at 1362 (citations omitted).

D & T acknowledges that, under the *Wessel/Rana Research* interpretation of the "in connection with" requirement, plaintiffs' claims relating to SVB's non-Prospectus statements would be actionable. However, D & T argues that such an interpretation is impermissible in light of *Central Bank*. In that case, the Supreme Court required that Section 10(b) be construed first by reference to the statutory language and, if the language is unclear, by reference to the express causes of action in the securities acts. —— U.S. at ——, 114 S.Ct. at 1448 (citation omitted). The court noted that "[p]olicy considerations cannot override our interpretation of the text and structure of the Act ...". *Id.* at ——, 114 S.Ct. at 1453 (citations omitted). D & T interprets this language as a rejection of the policy-based approach that has given rise to an expansive view of the "in connection with" requirement.

The court is not persuaded that an abandonment of the *Wessel/Rana Research* construction of the "in connection with" requirement is justified by the holding of *Central Bank*. The Supreme Court was deciding the limited issue of whether a private cause of action exists for aiding and abetting liability. It did not even discuss the "in connection with" requirement, much less interpret that clause to exclude from 10(b) liability the conduct of non-traders.

The only post-*Central Bank* court noted to have addressed the "in connection with" requirement's applicability to accountants' actions found that the requirement was satisfied by the "accounting firm's alleged issuance of materially false and misleading opinions on claimed fraudulent financial statements coupled with the firm's knowledge that stock purchasers would rely on the opinions." *Spear v. Ernst & Young*, 1994 WL 585815, *5–7 (D.S.C.1994). The *Spear* court noted that, "if Congress had wished to limit liability under Section 10(b) to sellers only, it could have done so" and that Congress instead recognized, as the Supreme Court has, that accountants who audit financial statements perform a "public watchdog" function: "a clean auditors' opinion is an indispensable tool in selling securities to investors." *Id.* at *7, citing *United States v. Arthur Young*, 465 U.S. 805, 818, 104 S.Ct. 1495, 1503, 79 L.Ed.2d 826 (1984). In *Spear*, as in this case, the statements at issue were financial statements audited by the accounting firm and included in the client's Form 10K reports. *Id.* at *3–4. This court finds the *Spear* court's reasoning persuasive, and adheres to the interpretation of the "in connection with" requirement previously held by the Ninth Circuit. Under that interpretation, as D & T concedes, the non-Prospectus statements satisfy the "in connection with" requirement and may be a basis for holding D & T primarily liable under 10(b).

## D. Scienter Requirement for 10(b) Liability

The Ninth Circuit recently clarified the pleading standard for plaintiffs seeking

to establish scienter, holding that "plaintiffs may aver scienter generally, just as [Rule 9(b) ] states—that is, simply by saying that scienter existed." *In re GlenFed, supra,* at 1547. In reaching that conclusion, the Ninth Circuit expressly disapproved of the requirement, imposed by the panel below and some courts outside of the Ninth Circuit, that plaintiffs in securities fraud cases must plead facts giving rise to a "strong inference" or "some inference" of fraudulent intent. *See, e.g., In re GlenFed, Inc. Sec. Litig.,* 11 F.3d 843, 847 (9th Cir.1993), *vacated and remanded,* 42 F.3d 1541 (9th Cir.1994) (en banc); *O'Brien v. National Property Analysts Partners,* 936 F.2d 674, 676 (2d Cir.1991). The court found that such a requirement conflicts with the clear language of Rule 9(b) that "[m]alice, intent, knowledge and other conditions of mind may be averred generally", and with the court's earlier ruling that 9(b) does not require *"any* particularity in connection with an averment of intent, knowledge or condition of the mind." *Id.* at 1545, *citing Walling v. Beverly Enters.,* 476 F.2d 393, 397 (9th Cir.1973) (emphasis in original).

Here, plaintiffs have met the requirement of pleading scienter as required by Rule 9(b) as interpreted by the *GlenFed* court.

### E. Material Misrepresentation/Omission Requirement

The *GlenFed* court's ruling that plaintiffs need not aver scienter with particularity does not relieve plaintiffs of their obligation to make "particularized allegations of the circumstances *constituting* fraud." *In re Glen-Fed, supra,* at 1547. In its previous Order, the court found that plaintiffs in this case had not fulfilled that obligation, noting that their complaint: (1) alleged merely that D & T made misrepresentations as to "faulty management practices, such as weak internal controls," and (2) failed to allege how, in particular, specific accounting standards and principles were violated by those alleged misrepresentations. The court directed plaintiffs to allege misrepresentations with the level of specificity required by Rule 9(b), i.e. by identifying "certain specific loans which [D & T] failed to properly disclose", and by specifying the connection between those acts of misrepresentation and specific accounting principles and standards.

■ Plaintiffs have satisfied the court's Order and the requirements of Rule 9(b). The complaint identifies each of the reports issued by SVB and allegedly approved by D & T, and details why specific statements contained in those reports were misleading. For instance, plaintiffs identify specific loans which allegedly should have been classified as non-performing loans or in-substance foreclosures, or at least should have been further investigated by D & T in its audit, and explain how the failure to take those actions allegedly violated specific accounting standards. ¶¶ 50 and 147–156. Plaintiffs allege specific deficient internal controls which should have been accounted for in D & T's audit planning process, and the specific accounting standards which were allegedly violated by the failure to do so. ¶¶ 54, 140–145. Plaintiffs also describe the amounts by which those alleged failures contributed to the alleged misstatements of various items in the financial statements. ¶¶ 124 and 127.

The court is not persuaded that plaintiffs' allegations relating to SVB's weak internal controls are not actionable because an accountant has no independent duty to disclose its findings regarding weak internal controls. *See Monroe v. Hughes,* 31 F.3d 772 (9th Cir.1994). Plaintiffs' claim with respect to SVB's internal controls is not that D & T should have disclosed those deficiencies, but that D & T "knew or recklessly disregarded that, as a result of these deficiencies, SVB's loan loss reserve was materially understated. Yet, D & T did not expand its audit," as allegedly required by GAAS.

Nor is the court persuaded by D & T's claim that no misrepresentation occurred because "the financial statements disclosed the exact information alleged by plaintiff." Plaintiffs have alleged, however, that the full extent of the loan portfolios' deterioration and the full dollar amount of non-performing loans were not disclosed. Complaint, ¶¶ 124, 147.

Finally, D. & T argues that plaintiffs have failed to specify loans as to which inadequate reserves were established. However, plain-

tiffs do identify specific high-risk loans which allegedly should have been identified as "in jeopardy of default and risk of nonpayment," or for which D & T should have "estab-lish[ed] adequate provisions for losses," Complaint ¶¶ 49–50. Plaintiffs' allegation with regard to the inadequacy of reserves for those loans may be somewhat terse, but it is sufficient to state a claim under Rule 9(b). In *GlenFed,* the court deemed adequate a similarly worded allegation of inadequate loan loss reserves:

> Plaintiffs provide lists of specific loans which ... had not undergone appraisal in more than two years. Plaintiffs then seek to tie the eventual updating of appraisals to significant increases in loan loss re-serves. These allegations ... are, we be-lieve, sufficient under Rule 9(b). Plaintiffs have set forth specific facts and specific statements made by or attributed to the defendants which ... in the case of loan loss reserves ... are alleged to reveal that GlenFed's statements, even if literally true, failed to reflect the true condition of the bank. (Citations omitted).

*In re GlenFed, supra,* at 1551. *See also In re Wells Fargo Sec. Litig.,* 12 F.3d 922, 926–28 (9th Cir.1993) (plaintiffs state a claim where they point to specific problem loans and allege that bank's reserves were under-stated because defendants failed to account for defaults and doubtful collectibility of these loans).

Thus, the court finds that plaintiffs have alleged, with sufficient particularity, the cir-cumstances constituting D & T's alleged fraudulent behavior.

### IV. Problems with Complaint

D & T did not specifically request that the first amended complaint be dismissed be-cause it is unwieldy and 116 pages long. However, as this court has previously indi-cated, there is no excuse for such lengthy and rambling complaints. The court in *Glen-Fed* in describing the complaint involved in that case summarized this court's feelings about plaintiffs' first amended complaint.

> The complaint is cumbersome almost to the point of abusiveness. We see nothing to prevent the district court ... from re-quiring, as a matter of prudent case man-agement, that plaintiffs streamline and re-organize the complaint before allowing it to serve as the document controlling discov-ery, or, indeed, before requiring defen-dants to file an answer. Complaints fash-ioned as this one is are an unwelcome and wholly unnecessary strain on defendants and on the court system.

*In re GlenFed, supra,* at 1554.

The court in its case management order, issued concurrently with this order, will deal with the complaint from a case management standpoint.

### V. Order

For the foregoing reasons, and good cause appearing therefor, defendant's motion to dismiss is denied.