Elvidio VENNITTILLI, Josephine Vennittilli, et. al, individually and on behalf of a class of persons similarly situated, Plaintiffs,

v.

PRIMERICA, INC., PFS Investments, Inc., Basic Energy and Affiliated Resources, Inc., Mid America Resource Corporation, and Robert Vecchioni, jointly and severally, Defendants.

Margaret FOURNIER, James Addabbo, Adam Angelas, Greg Berklich, Maurice Bogart, Beth Calhoun, Thomas Clem, Richard Doddie, Scott Downey, Joan A. Elwert Trust, Megan Fasel, Michael Foreman, Martin George, Larry Gerschbacher, Marie Hartman, Jack Henshaw, Nelson Iddings, Giuseppe Ioco, Eugene Ignasiak, Robert Jacques, Kenneth Johnston, Richard Kujala, Derrick Knieper, Tracy Leonard, Adrian Lucas, Laura Mahoney, John McNulty, Reginald Mendenhall, George Nolan, David Osterland, Aurthur Paul, Sebastian Post, Roberta Pultie, Rudy Roos, Robert Schulte, Margaret Spoor, Joseph Tocco, Stephen Ternullo, Betty Utz, Bette Valade, Robert Vrable, Raymond Weber, Kathleen Weiss, Henry Ybarra, Jeanette Zajdlik, Jack Zapytowski, et al., Plaintiffs,

v.

PRIMERICA FINANCIAL SERVICES, INC., d/b/a PFS Investments, Inc., Defendants.

Brian SULLIVAN and Julia Sullivan, Plaintiffs,

v.

BASIC ENERGY AND AFFILIATED RESOURCES, INC., a Michigan corporation, Michael Schouman, Sarah Delaney, Primerica Financial Services, Inc., a Georgia corporation, PFS Investments, Inc., a Georgia corporation, David McLeod, Gas & Oil Lease Development, Inc., a Michigan corporation, David Henry, Joan Henry, Total Integrated Gas & Energy Resources, Inc., a Michigan corporation, Charles Michael, jointly and severally, Defendants.

Nos. 95–73017, 95–75241 and 96–70060.

United States District Court, E.D. Michigan, Southern Division.

Sept. 24, 1996.

D. Michael Kratchman, Rubenstein Plotkin, PC, Southfield, MI; Michael P. Marsalese, Bloomfield Hills, MI; Thomas R. Charboneau, Jr., Sills, Law, Essad, Fielder & Charboneau, PC, Bloomfield Hills, MI, for plaintiffs.

Donald S. Young, Ava K. Ortner, Dykema Gossett, PLLC, Detroit, MI; Peter Q. Bassett, Alston & Bird, Atlanta, GA, for defendants.

## MEMORANDUM OPINION AND ORDER

GILMORE, District Judge.

Three cases are before the court on Motions to Dismiss by common defendants, Primerica Financial Services, Inc. and PFS Investments[1] (hereinafter "Primerica defendants"): *Fournier v. Primerica*, Case No. 95–75241; *Vennittilli v. Primerica*, Case No. 95–73017; and *Sullivan v. BEAR*, Case No.

96–70060 (hereinafter *Fournier, Vennittilli* and *Sullivan*). Because the issues and parties overlap, the court's opinion addresses all three Motions to Dismiss.

These cases are also related to another case currently before the court, *Securities and Exchange Commission v. Basic Energy & Affiliated Resources,* Case No. 94–74434. A brief explanation of this case is helpful to understanding those which are the subject of this Opinion:

### I.

Between January 1, 1992 and November 4, 1994, Basic Energy & Affiliated Resources (hereinafter "BEAR") and Mid America Resources Corporation (hereinafter "MARC") marketed approximately seventeen (17) oil and gas programs, rights, leases, investment contracts, loan programs and equity programs through Robert Vecchioni and about one hundred and fifty (150) marketers to some 2,100 investors. Plaintiffs in all these cases are investors in the BEAR programs.

Some investors allege they were told that their investments were secured by financial bonds or that their investments were secured by collateral or assets from other programs. Additionally, investors in loan programs allege they were guaranteed a return of principal and interest as well as a premium based on a percentage of the gross revenues from the sale of oil and gas. Equity investors allege they were promised a percentage of the production of certain gas and oil wells.

Primerica's National Sales and Marketing Director, Robert Vecchioni, solicited and sold these BEAR programs. It is the association between Primerica and Vecchioni which plaintiffs allege forms the basis of their various claims based on failure to supervise, negligent hiring, fraud and violations of the securities laws, among others.

On November 2, 1994, the Securities and Exchange Commission (hereinafter "SEC") brought an enforcement action against Vecchioni, other BEAR officers and directors,

---

**1.** Defendant Primerica Financial Services is an insurance company engaged in the business of providing financial advice and products to the general public. Defendant PFS Investments is a registered broker-dealer with the Securities and Exchange Commission and is a member of the National Association of Securities Dealers.

BEAR, MARC and several marketers alleging that the defendants operated a Ponzi scheme in violation of federal securities laws. As of December 1995, all of the defendants in that action settled with the SEC and have or are satisfying disgorgement and prejudgment interest obligations; as a result, no trial was held.[2]

Subsequently, groups of individual investors brought suit against Vecchioni's employer, Primerica, PFS Investments, marketers who sold them the various programs and the defendants named in the SEC enforcement action. The Primerica defendants then filed Motions to Dismiss in these three investor cases.

Also pending are motions to consolidate and certify a class, which the court will consider immediately following resolution of the motions to dismiss.

## II.

The purpose of Federal Rule of Procedure 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true. *Mayer v. Mylod,* 988 F.2d 635, 638 (6th Cir.1993). In *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957), the Supreme Court held that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

In a recent Sixth Circuit case, *In re DeLorean Motor Co.,* 991 F.2d 1236 (6th Cir.1993), the court summarized the standards for deciding a Rule 12(b)(6) motion as follows:

> [A] court deciding such a motion must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff can undoubtedly prove no set of facts in support of his claims that would entitle him to relief.... A complaint need only give fair notice of what the plaintiff's claim is and the grounds upon which it

rests.... A judge may not grant a Fed. R.Civ.P. 12(b)(6) motion to dismiss based on a disbelief of a complaint's factual allegations. (Citations omitted).

*Id.* at 1240. The court has applied this standard when evaluating the Primerica defendants' Motions to Dismiss the following claims: (1) conspiracy or aiding and abetting, (2) negligent hiring and negligent supervision, (3) violations of NASD rules, (4) violations of the Michigan Consumer Protection Act, (5) violations of Section 17 of the Securities Act, (6) violations of Section 5 of the Securities Act, (7) control person liability and (8) violations of RICO.

## III.

### A. Conspiracy or Aiding and Abetting

■ Defendants' Motion to Dismiss the aiding and abetting and conspiracy count in *Fournier* is granted based on *Central Bank of Denver N.A. v. First Interstate Bank of Denver, N.A.,* 511 U.S. 164, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994), where the Supreme Court held generally that there is no private cause of action for aiding and abetting securities fraud and specifically that there is no such cause of action under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b). The *Central Bank* Court concluded that:

> ... the statute prohibits only the making of a material misstatement (or omission) or the commission of a manipulative act.... The proscription does not include giving aid to a person who commits a manipulative or deceptive act. We cannot amend the statute to create liability for acts that are not themselves manipulative or deceptive within the meaning of the statute.

*Id.* at ——, 114 S.Ct. at 1448.

The Court relied on statutory interpretation of the express causes of action provided in the 1934 Act in support of this conclusion and found that the text of the Act does not reach those who aid and abet. *Central Bank,* 511 U.S. at ——–——, 114 S.Ct. at 1448–49. After surveying the express causes

---

**2.** In addition, all BEAR Defendants are under injunctive order not to engage in the selling of any kind of security. The court is currently overseeing the liquidation of BEAR, MARC and their entity affiliates.

of action, the Court concluded that each specified the actions for which a defendant may be liable, and none of those imposed liability on aiders or abettors. *Id.* From this, the Court inferred that Congress would not have attached aiding and abetting liability to § 10(b) had it provided expressly for a § 10(b) cause of action. *Id.* It can also be inferred, therefore, that Congress would not have attached aiding and abetting liability for a cause of action under any other implied cause of action, such as § 17. It is clear that *Central Bank* eliminates aiding and abetting liability under either express or implied causes of action under the Securities Acts of 1933 and 1934.

■ In the case at bar, plaintiffs also allege conspiracy of violating the securities laws. This is merely another way of pleading aiding and abetting, which is no longer a viable allegation after *Central Bank.* Many district courts and the Ninth Circuit have so held. *See Decker v. GlenFed, Inc.,* 60 F.3d 591 (9th Cir.1995); *see also Adam v. Silicon Valley Bancshares,* 884 F.Supp. 1398 (N.D.Cal.1995). It is also this court's determination that alleging conspiracy to violate the securities laws is no longer a viable claim after *Central Bank.*

Because plaintiffs could prove no set of facts in support of a claim for conspiracy or aiding and abetting securities fraud, this claim is dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

**B. Negligent Hiring and Negligent Supervision**

■ Michigan has never recognized a claim for negligent hiring by holding an employer liable for an employee's acts resulting in economic injury or for any kind of fraudulent acts. While Michigan courts have recognized a cause of action for negligent hiring where an employee commits a foreseeable act of physical violence; *see Bradley v. Stevens,* 329 Mich. 556, 46 N.W.2d 382 (1951); Michigan has not extended the concept to include what is alleged in these cases. Accordingly, this court declines to extend negligent hiring to include economic injuries. Thus, plaintiffs' negligent hiring claims in *Fournier* and *Sullivan* are dismissed for failure to state a claim upon which relief may be granted. Fed.R.Civ.P. 12(b)(6).

■ As for negligent supervision claims in *Fournier* and *Sullivan,* defendants' Motions to Dismiss are denied. Defendants rely on *Kirkland v. E.F. Hutton & Co.,* 564 F.Supp. 427 (E.D.Mich.1983), which is instructive; however, it does not apply in these cases because Michigan securities laws are not at issue.

In *Kirkland,* the plaintiff attempted to plead a common law negligence action based on defendant's alleged failure to adequately supervise its employees. In addition, plaintiffs alleged violations of Michigan's securities laws. The court granted defendant's motion for summary judgment, reasoning that plaintiff's sole remedy was Michigan's securities laws because "[w]here the same act is alleged to violate the statutory provision and the common law, state law holds that the statutory remedy is the exclusive civil remedy." *Kirkland,* 564 F.Supp. at 445. Because plaintiffs in *Fournier* and *Sullivan* do not assert violations of Michigan's securities laws as well as breach of a duty to supervise, *Kirkland* is not controlling. Therefore, Defendants' Motion to Dismiss the negligent supervision claims is denied.

**C. Violations of NASD Rules**

■ The Sixth Circuit has held that there is no private cause of action for violation of National Association of Securities Dealers (hereinafter "NASD") rules. *See Craighead v. E.F. Hutton & Co.,* 899 F.2d 485, 493 (6th Cir.1990). *See also Lantz v. Private Satellite Television,* 813 F.Supp. 554, 556 (E.D.Mich. 1993) ("the Sixth Circuit has held that these rules [NYSE and NASD] do not provide a private right of action.").

After holding that "a violation of the [NASD] rules standing alone ... does not give rise to a private cause of action," the court in *Kirkland, supra,* noted that "violations of these rules may be probative of plaintiff's claims under the antifraud provisions of the securities laws." *Kirkland,* 564 F.Supp. at 443. This court agrees with that conclusion; however, alleging violations of NASD rules does not state a claim upon

which relief may be granted. Thus, defendants' motion to dismiss the count alleging violation of NASD rules is granted in *Fournier* pursuant to Fed.R.Civ.P. 12(b)(6).

### D. Violations of MCPA

■ Claims based upon the sale of securities are not subject to the Michigan Consumer Protection Act, M.C.L. 445.904, *et seq.*, (hereinafter "MCPA") because Section 904(1)(a) of the MCPA expressly exempts any "transaction or conduct specifically authorized under the laws administered by a regulatory board or officer acting under statutory authority of this state or the United States."

Clearly, the sale of securities is regulated. Therefore, plaintiffs in *Fournier* cannot bring a claim under the MCPA based on the sale of securities. See *Silverman v. Niswonger*, 761 F.Supp. 464, 471 (E.D.Mich.1991); *see also Caproni v. Prudential Securities, Inc.*, 15 F.3d 614 (6th Cir.1994). Thus, in *Fournier*, defendants' Motion to Dismiss the claim based on violation of the Michigan Consumer Protection Act is granted.[3]

### E. Fraud

■ The common law fraud claim, Count V, in *Fournier* is dismissed for failure to plead fraud with particularity pursuant to Fed.R.Civ.P. 9(b). The Rule provides as follows:

**Fraud, Mistake, Condition of the Mind.** In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.

In the controlling Sixth Circuit case, *Benoay v. Decker*, 517 F.Supp. 490 (E.D.Mich. 1981), aff'd 735 F.2d 1363 (6th Cir.1984) (Gilmore, J.), this court explained that multiple defendants must be distinguished, and if they are not, the complaint is inadequate:

Each individual must be apprised separately of the specific acts of which he is accused, especially in a case involving multiple defendants. The complaint, therefore, may not rely upon blanket references to acts or omissions by all of the 'defendants,' for each defendant named in the complaint is entitled to be apprised of the circumstances surrounding the fraudulent conduct with which he individually stands charged. (Citations omitted).

*Id.* at 493.

This court also explained the rationale behind Rule 9(b) when applying it to securities litigation:

In the context of securities litigation it has generally been held that Rule 9(b) serves three purposes: 1) it ensures that allegations are specific enough to inform a defendant of the act of which the plaintiff complains, and to enable him to prepare an effective response and defense; 2) it eliminates those complaints filed as a pretext for the discovery of unknown wrongs—a 9(b) claimant must know what his claim is when he files; and 3) it seeks to protect defendants from unfounded charges of wrongdoing which injure their reputations and goodwill.

*Id.* at 492.

In setting out the common law fraud count (count five), the *Fournier* plaintiffs allege generally that Primerica "employed a scheme and conspiracy to defraud" with "the intent to deceive such investors" by "inducing investors" to purchase securities. *Fournier* Complaint, at ¶ 86.

Further, plaintiffs allege that Primerica's agents made misrepresentations and omissions to plaintiffs who were "without knowledge of their falsity." *Fournier* Complaint, at ¶ 87. The complaint also states that "[i]n reliance upon Primerica Agents [sic] misrepresentations and their fidelity, integrity and superior knowledge, Plaintiffs and other members of the Class, were induced to and did purchase unregistered securities in BEAR." *Id.*

This is the extent of the allegations of fraud. Nowhere do the *Fournier* plaintiffs specifically allege the misrepresentations and omissions made as attributed to each marketer, over whom Primerica is alleged to have

---

**3.** Plaintiffs in *Vennittilli* voluntarily dismissed their claim based on a violation of the Michigan

Consumer Protection Act.

control. Although Primerica is generally apprised of the acts with which it is charged, it is not sufficiently apprised of each marketer's omissions and misrepresentations made to each named plaintiff such that it is able to prepare an effective response and defense. This is required by Fed.R.Civ.P. 9(b) and by *Benoay, supra.*

In *Fournier,* it is clear that plaintiffs have not met the requirements of Rule 9(b), which is a substantive rule. Failure to meet the requirements of 9(b) means that plaintiffs have failed to state a valid claim. *Id.* Accordingly, the common law fraud claim is dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

### F. RICO Claims

Directly related to the former discussion of fraud are the RICO claims alleged in *Sullivan* and *Fournier.*

In 1995, the Racketeers Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1964(c), was amended to preclude private causes of action based on alleged violations of securities laws. The amendment provides:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee, **except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962.** (Emphasis added).

■ The notes following the amendment state that it does not apply to private actions arising under subchapter I of chapter 2A of Title 15, Commerce and Trade, or chapter 2B of Title 15, commenced before and pending on December 22, 1995. The complaint in *Fournier* was filed on October 16, 1995; therefore, the amendment does not affect *Fournier.* However, *Sullivan* was filed in January of 1996; therefore, the RICO claims, Counts VIII and IX, in *Sullivan* are dismissed based on the 1995 amendment.

The analysis does not end here, however. Count VIII in *Fournier* must meet the standards of setting out a RICO claim.

To maintain a private action for violation of RICO, it is necessary to prove conduct **of an enterprise** through a pattern of racketeering activity. 18 U.S.C. § 1962 (emphasis added). The *enterprise* element alleged in the *Fournier* complaint is securities fraud. Thus, plaintiffs must have effectively set out an underlying claim of securities fraud to establish that the Primerica defendants were engaged in an enterprise. The court has found that plaintiffs have failed to make a viable fraud claim, as discussed *supra.* In further support of that conclusion, the court relies on the following analysis addressing an underlying fraud claim as the basis of a RICO claim.

Because plaintiffs made "loose references to mailings and telephone calls" in support of their claim of underlying mail and wire fraud and failed to identify the parties to the alleged fraudulent communications, the court in *Jepson Inc. v. Makita Corp.,* 34 F.3d 1321 (7th Cir.1994), affirmed the district court's dismissal of the RICO claims, finding:

> [T]hese details are mandated not only by Rule 9(b) but by the very nature of a RICO claim. For without an adequately detailed description of the predicate acts of mail and wire fraud, a complaint does not provide either the defendant or the court with sufficient information to determine whether or not a pattern of racketeering activity has been established.... Moreover, when the complaint accuses multiple defendants of participating in the scheme to defraud, the plaintiffs must take care to identify which of them was responsible for the individual acts of fraud.

*Jepson,* 34 F.3d at 1328.

■ The time, place and misrepresentation(s) upon which the plaintiffs relied must be alleged to further satisfy FRCP 9(b). *Bender v. Southland Corp.,* 749 F.2d 1205, 1216 (6th Cir.1984). Further, the identity of the person making the alleged misrepresentations must also be given, as well as what that person gained by the misrepresentation. *Seattle–First National Bank v. Carlstedt,* 800 F.2d 1008, 1011 (10th Cir.1986).

In *Fournier*, plaintiffs failed to state the time, place and misrepresentations on which they relied. Neither did they name the person making the misrepresentation or what that individual may have gained. Therefore, the Primerica defendants are not sufficiently apprised of the circumstances surrounding the fraudulent conduct with which they are imputed to have controlled or to have had knowledge of.

Accordingly, this court dismisses the RICO claims in *Fournier* for failure to plead the underlying fraud with particularity pursuant to Fed.R.Civ.P. 9(b) and 18 U.S.C. § 1964(c).

### G. Private Cause of Action Under Sections 17

The circuits are split on whether or not there is an implied right of action under Section 17, and the Supreme Court has not decided the issue. The Sixth Circuit has held that Section 17(a) implies a private right of action only for "purchasers" in *Gaff v. FDIC*, 814 F.2d 311, 319 (6th Cir.), vacated in part on other grounds, 828 F.2d 1145 (1987); *Gutter v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 644 F.2d 1194, 1196–97 (6th Cir. 1981), *cert. denied*, 455 U.S. 909, 102 S.Ct. 1256, 71 L.Ed.2d 447 (1982); *Simmons v. Wolfson*, 428 F.2d 455, 456 (6th Cir.1970) (per curiam), *cert. denied*, 400 U.S. 999, 91 S.Ct. 459, 27 L.Ed.2d 450 (1971). The Sixth Circuit confirmed a private cause of action under Section 17(a) in *Craighead v. E.F. Hutton & Co., Inc.*, 899 F.2d 485, 492 (6th Cir.1990).

However, the Sixth Circuit indicated a possible change in its view in an unpublished decision, *Burns v. Price Waterhouse*, No. 94–3134, slip op. at 1, 1995 WL 106116 (6th Cir. Mar 10, 1995). There, the Sixth Circuit affirmed the district court's dismissal of a Section 17 claim "for the reasons stated in the district court's July 16, 1993 and December 30, 1993 Memorandum Opinions." *Id.* at 1. The district court's July 16 Opinion held that no private cause of action existed under Section 17(a) and dismissed the claim. Thus, the Sixth Circuit implied that there is no private right of action in Section 17(a) cases.

While the vast weight of authority concurs with *Burns*, (*Finkel v. Stratton Corp.*, 962 F.2d 169 (2d Cir.1992); *Bath v. Bushkin, Gaims, Gaines & Jonas*, 913 F.2d 817 (10th Cir.1990); *Schlifke v. Seafirst Corp.*, 866 F.2d 935 (7th Cir.1989); *Newcome v. Esrey*, 862 F.2d 1099 (4th Cir.1988); *Currie v. Cayman Resources Corp.*, 835 F.2d 780 (11th Cir.1988); *Puchall v. Houghton, Cluck, Coughlin & Riley*, 823 F.2d 1349 (9th Cir. 1987) (en banc); *Deviries v. Prudential–Bache Securities, Inc.*, 805 F.2d 326 (8th Cir.1986); *Landry v. All American Assurance Co.*, 688 F.2d 381 (5th Cir.1982)), this court will follow established Sixth Circuit law that there is an implied right of action under Section 17(a).

Plaintiffs must also show that they were purchasers and that defendants were sellers under the statute. The controlling case in this circuit on the issue is *Craighead v. E.F. Hutton, Inc.*, 899 F.2d 485 (6th Cir. 1990) wherein the court upheld the district court's dismissal of a Section 17(a) claim by finding that plaintiffs failed to allege that the defendants were "sellers" who could be held liable under Section 17(a). *Id.* at 493. In arriving at this conclusion, the court discussed how the term "seller" has been interpreted under the Act:

> ... the 1933 Securities Act has been held to define "seller" not only as the party who passes title of ownership in the transaction, but also those parties that have played a "substantial role" in persuading or seducing the purchasers into buying the securities. (Citations omitted.)

*Id.*

By alleging control person liability and by alleging specific facts regarding the sellers of the unregistered securities, plaintiffs have pled a set of facts they could prove that would entitle them to relief from defendants. Therefore, the Section 17 claims survive the Motions to Dismiss, and defendants' Motion is denied as to those counts.

### H. Private Right of Action under Section 5

Section 5 of the Securities Act, 15 U.S.C. § 77e, prohibits "the use of any means or instruments of transportation or communication in interstate commerce or of

the mails" to sell unregistered securities, § 77e(a)(1), or to transport the unregistered security, § 77e(a)(2). Subsection c provides that it is unlawful to engage in such conduct directly or indirectly.

Clearly, Sections 5(a) and (c), standing alone, do not create private rights of action. *See, e.g., LeCroy v. Dean Witter Reynolds, Inc.*, 585 F.Supp. 753, 757 (E.D.Ark.1984) ("[Section 5 of the Securities Act], standing alone, creates no private cause of action ..."); *see also Payne v. Fidelity Homes of America, Inc.*, 437 F.Supp. 656, 657 (W.D.Ky.1977).

Although Section 12(1) of the Securities Act, 15 U.S.C. § 77*l* (1), may allow a private cause of action for a Section 5 violation, plaintiffs in *Sullivan* and *Fournier* have failed to plead an underlying Section 12 violation affirmatively with respect to these defendants. Therefore, the Section 5 claims in *Sullivan* and *Fournier* are dismissed. However, *Vennittilli* successfully pled an underlying violation of the securities laws in Counts I and II. Thus, the Section 5 claim in *Vennittilli* is not dismissed.

### I. Control Person Liability

Controlling person liability is predicated on 15 U.S.C. § 77o, which provides:

Every person who, by or through stock ownership, agency, or otherwise, or who pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock ownership or otherwise, controls any person liable under sections 77k or 77l of this title, shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person had no knowledge of or reasonable ground to believe in the existence of facts by reason of which the liability of the controlled person is alleged to exist.

Affirming the district court's formulation of a two-part test it used in determining control person liability, the Eighth Circuit held that plaintiffs must establish, first, that the defendant lender "actually participated in (i.e., exercised control over) the operations of the corporation in general; then he must prove that the defendant possessed the power to control the specific transaction or activity upon which the primary violation is predicated, but he need not prove that this later power was exercised." *Metge v. Baehler*, 762 F.2d 621 (8th Cir.1985), *cert. denied*, 474 U.S. 1057, 106 S.Ct. 798, 88 L.Ed.2d 774 (1986).

While the Sixth Circuit has not adopted a test for control person liability, it cited the *Metge* test with approval in *Sanders Confectionery Products, Inc. v. Heller Financial, Inc.*, 973 F.2d 474, 486 (6th Cir.1992).

Assuming all plaintiffs' factual allegations are true, plaintiffs in *Fournier* and *Vennittilli* have set forth the requisite elements for establishing control person liability under *Metge's* two-part test.

██ However, plaintiffs must also establish there is underlying Section 11 or Section 12 liability for control person liability to attach. *Montcalm County v. McDonald & Co. Securities*, 833 F.Supp. 1225 (W.D.Mich. 1993). Plaintiffs in *Fournier* have not done so. Accordingly, this count in *Fournier* is dismissed. Plaintiffs in *Vennittilli* did plead an underlying Section 12 violation in Counts I and II; accordingly, the control person liability claim in *Vennittilli* is not dismissed.

### IV.

In summary, the court grants in part and denies in part the Primerica defendants' motions to dismiss as follows. In *Sullivan*, defendants' Motion to Dismiss is **GRANTED** on Count I, Section 5(a) and 5(c) violations; **DENIED** on the RICO claims, Counts VIII and IX; **GRANTED** on the negligent hiring claim, Count XI; and **DENIED** on the negligent supervision claim, Count XI. With respect to the remaining claims, plaintiffs did not specifically name the Primerica defendants in the Section 17 claim, the Section 10b claim and the piercing the corporate veil claim. Therefore, those claims are **DISMISSED** as against the Primerica defendants.

In *Fournier*, defendants' Motion to Dismiss is **GRANTED** on the aiding and abetting claim, alleged generally; **GRANTED** on

the control person liability claim, alleged generally; **GRANTED** on the negligent hiring claim, Count II; **DENIED** on the negligent supervision claim, Count III; **GRANTED** on violation of the NASD rules count, Count IV; **GRANTED** on the fraud count, Count V; **DENIED** on the Section 17 count, Count VI; and **GRANTED** on the Section 5, MCPA and RICO claims, Counts VI, VII and VIII, respectively.

In *Vennittilli,* defendants' Motion to Dismiss is **DENIED** on the control person liability claim, Count III, and **DENIED** on the Michigan securities law claim, Count V. Additionally, plaintiffs are granted leave to amend the Michigan securities law claim to add the specific section defendants are alleged to have violated, Section 401 of the Michigan Uniform Securities Act.

When the Court considers the pending motions for consolidation and class certification, all plaintiffs must affirmatively plead compliance with the statute of limitations, as directed in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991).

**IT IS SO ORDERED.**